IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YVETTE "WILL RAP 4 WEED" GBALAZEH, on behalf of herself and all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIV. CASE NO. _____ |
| CITY OF DALLAS, TEXAS, a municipality of the State of Texas, | § § § | |
| Defendant. | § § | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW, Plaintiff YVETTE "WILL RAP 4 WEED" GBALAZEH, on behalf of herself and all others similarly situated (collectively, "**Plaintiff**"), files this Verified Complaint for Declaratory and Injunctive Relief and Application for Temporary Restraining Order and Preliminary Injunction (this "**Complaint**") against the Defendant CITY OF DALLAS, TEXAS, and its employees, agents, and successors in office (collectively, "**Defendant**"), and in support respectfully states as follows:

## I.

## INTRODUCTION

1.      First and foremost, this case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First, Fourth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983 seeking redress for the deprivation of the constitutional rights of Plaintiff, and violations of law caused by Defendant.

Moreover, this case is about the right of all Americans to exercise their constitutionally protected right to free speech and association, including unpopular or uncomfortable political viewpoints.

2.    This case challenges a content-based restriction on speech, alleging that an Ordinance of the City of Dallas prohibits Plaintiff's First and Fourteenth Amendment Rights, which is unconstitutional both facially, and as applied.  Specifically, Plaintiff challenges the validity of Section 31-35 of the Code of Ordinances of the City of Dallas, Texas (the "**Free Speech Ban**" also known as the "**Panhandling Ordinance**").  A true and correct copy of the Free Speech Ban is attached hereto as **<u>Exhibit A</u>** and incorporated by reference herein.

3.    Panhandling is—like the act of seeking shelter—life-sustaining conduct for some of Dallas's less fortunate residents.  This law literally silences these Dallasites in order to shield more economically fortunate people from speech that makes them uncomfortable.  Restricting the speech of Dallas residents who may be in the most serious need is a blatant violation of the First Amendment, serving no legitimate or compelling government interest.

4.    Through Defendant's enactment and enforcement of the Free Speech Ban, Defendant has deprived and continues to deprive Plaintiff of her paramount rights and guarantees protected by the United States Constitution, such depravation being actionable under 42 U.S.C. § 1983.  The allegations herein relate to the ordinance and the actions and practices of those entities, persons, their predecessors and/or successors, who, while acting in their capacity as representatives of the City of Dallas, Texas, have enforced the Free Speech Ban.  All acts alleged herein were committed by Defendant under the color of state law and municipal authority.  Plaintiff seeks injunctive relief, declaratory relief, damages and attorneys fees pursuant to 42 U.SC. §§ 1983 and 1988.

## II.

## JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (constitutional violation under color of state law).

6.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.SC. §§ 2201 and 2202, by Rule 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.  Plaintiff's claims for damages are authorized under 42 U.SC. § 1983 and by the general legal and equitable powers of this Court.

7.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b), as the claims occurred and are occurring in this district and all parties reside within the district.

## III.

## PARTIES

8.      Plaintiff is a political activist and resident of the City of Dallas, Texas.

9.      Defendant City of Dallas, Texas is a municipal governmental authority and a subdivision of the State of Texas.  A municipality is a "person" subject to suit under 42 U.S.C. § 1983 and can be sued.  *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979) ("But the Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'").[1]  Defendant City of Dallas may be served through the mayor, clerk, secretary, or treasurer pursuant to Subsection 17.024(b) of the Texas Civil Practice & Remedies Code at Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201.

---

[1] Additionally, there is no sovereign immunity bar where the complainant seeks injunctive relief. *See Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975).

10.    Defendant and its officials are responsible for creating, adopting, and enforcing the rules, regulations, ordinances, laws, policies, practices, procedures, and/or customs for the City of Dallas, Texas.

11.    Defendant, its officials, and police department are responsible for creating, adopting, approving, ratifying, and enforcing the ordinances, rules, regulations, policies, practices, procedures, and/or customs of the City, including the policies, practices, and procedures of its police department and ordinances, as set forth in this Complaint.

## IV.

### FACTUAL ALLEGATIONS

**A.    Plaintiff's Political Activism & Candidacy for Texas Governor in 2018.**

12.    Plaintiff is a political activist who exercises her rights to free speech and free assembly by advocating for medical marijuana reform and legalization.  She shares her message at city council meetings, criminal justice advisory board meetings, and the Dallas County Commissioner's Court, and she has even spoken with Dallas County Sheriff Lupe Valdez and appeared in front of nationwide television audiences in support of her cause.  Additionally, Plaintiff brings awareness to the issue through lyrical performance in traditional public forums. As part of her performance and in order to maximize her audience, Plaintiff utilizes a homemade cardboard sign that contains the slogan behind her mission: "*Will Rap 4 Weed*."  Plaintiff has regularly engaged in and wishes to continue to engage in lawful, peaceful free speech in the City of Dallas.

13.    Plaintiff's political activism stems from her personal battle with an eating disorder since she was 15 years old.  In the early 2000s, Plaintiff moved to California where she became a medical marijuana patient, on the advice of doctors who informed her that the drug might help

---

her deal with the symptoms, but whose hands were tied because they were situated in Texas where marijuana is illegal. After receiving her patient card, nearly ten years after her initial diagnosis, she found that the drug was effective at easing her symptoms and enabling her to overcome the disease.  This inspired Plaintiff's activism and birthed the idea for using the slogan "Will Rap 4 Weed" to help spread her message.

14.     In 2013, Plaintiff moved to the Houston, Texas area and continued her activism for hers and other patients' rights for medical marijuana.[2]  Plaintiff's "Will Rap 4 Weed" message went viral and she was chosen by the *Houston Chronicle* as one of Houston's 43 most fascinating people.[3]  Local media outlets began running reports about the "Will Rap 4 Weed" activist, she performed her street rap on the George Lopez show, and she also made an appearance on Jerry Springer's show "Baggage."[4]

15.     Later in 2013, Plaintiff moved to Dallas and continued her boots-on-the-ground campaign on the various street corners of Deep Ellum in southeast Dallas.  Despite receiving hostility from various individuals who disagree with her message, Plaintiff has continued her political activism by invoking her constitutional right to protest what she feels is not just a civil rights violation but a human rights one, when it comes to patients receiving medical marijuana when other states have already allowed it.  Plaintiff's activism is a full-time job insofar as she attends city council meetings, advisory board meetings and other government functions related to

---

[2] *See* Craig Hlavaty, *'Will Rap 4 Weed' Sign is a Political Statement, Not a Request*, HOUSTON CHRONICLE, Sept. 3, 2013, http://blog.chron.com/thetexican/2013/09/will-rap-4-weed-sign-is-a-political-statement-not-a-request/ (last visited Jan. 8, 2018).

[3] *See Houston's 43 Most Fascinating People*, HOUSTON CHRONICLE, http://www.chron.com/life/slideshow/Houston-s-43-most-fascinating-people-75322/photo-5550408.php (last visited Jan. 8, 2018).

[4] *See* Yvette Gbalazeh, *Will Rap 4 Weed with George Lopez and Jerry Springer*, YOUTUBE, Jun. 25, 2012, https://www.youtube.com/watch?v=DkLM8gGXto4 (last visited Jan. 8, 2018).

her mission.  Notably, Plaintiff is running for Texas Governor in 2018 in order to effect the medical marijuana policy reforms she so desires.[5]

**B.**   **The Challenged Free Speech Ban: Section 31-35.**

16.   Defendant's Free Speech Ban, identified by local media outlets as the "Panhandling Law,"[6] is aimed at criminalizing the attempts of the less fortunate to exercise their right to free speech by seeking charity for themselves.  The Free Speech Ban does this by making it unlawful to solicit for money or something of value in certain areas and at certain times of the day in the City of Dallas.

17.   The Free Speech Ban, titled "Solicitation After Sunset" specifically provides that:

A person commits an offense if he conducts a solicitation in any outdoor area in the city at any time between sunset and sunrise on any day of the week.  It is a defense to prosecution under this subsection if the solicitation:

(1)  consisted exclusively of passive, nonverbal acts; or

(2)  was being conducted on property with the advance written permission of the owner, manager, or other person in control of the property.

*See* **Exhibit A**, Free Speech Ban, Section 31-35(c).

18.   "Solicitation" in the Free Speech Ban "means to ask, beg, solicit, or plead, whether orally or in a written or printed manner, for the purpose of receiving contributions, alms, charity, or gifts of items of value for oneself or another person."  *See* Free Speech Ban, Section 31-35(a)(10).

---

[5] *See* Amber Joseph, *Weed Activist Running for Texas Governor to Re-Legalize*, CROSSROADS TODAY NEWSCENTER, December 7, 2017, http://www.crossroadstoday.com/story/37016934/ weed-activist-running-for-texas-governor-to-re-legalize (last visited Jan. 8, 2018).

[6] *See* Eric Nicholson, *Dallas Is Probably Screwed If It Gets Sued Over New Panhandling Crackdown*, Dallas Observer, January 3, 2016, http://www.dallasobserver.com/news/dallas-is-probably-screwed-if-it-gets-sued-over-new-panhandling-crackdown-7990354 (last visited Jan. 8, 2018).

19.     "Sunrise" means "the time of day published on the weather page of the *Dallas Morning News* as the time for sunrise on a particular day in the city," and "Sunset" means "the time of day published on the weather page of the *Dallas Morning News* as the time of sunset on a particular day in the city." *See* Free Speech Ban, Section 31-35(a)(11)–(12).

20.     In fact, other provisions of the Free Speech Ban are similarly improper.  Section 31-35(d), "Solicitation-free zones" provides that:

> A person commits an offense if he conducts solicitation at any time in any outdoor area located within any of the following solicitation-free zones:
>
> (A) Central Business District solicitation-free zone;
>
> (B) Deep Ellum solicitation-free zone;
>
> (C) Uptown solicitation-free zone; and
>
> (D) Victory solicitation-free zone.

*See* Free Speech Ban, Section 31-35(d).

21.     In turn, each of the "Solicitation-free zones" are defined areas of the City of Dallas.  For example, "Central Business District solicitation-free zone" is defined as "the area of the city bounded by Woodall Rodgers Freeway on the north, Central Expressway (elevated bypass) on the east, R.L. Thornton Freeway on the south, and Stemmons Freeway on the west." *See* Free Speech Ban, Section 31-35(a)(2); *see also* Free Speech Ban, §§ 31-35(a)(4) (defining the Deep Ellum solicitation-free zone); 31-35(a)(13) (defining the Uptown solicitation-free zone); 31-35(a)(14) (defining the Victory solicitation-free zone).

22.     Section 31-35(b) provides that: "[a] person commits an offense if he conducts a solicitation by coercion." *See* Free Speech Ban, Dallas City Ordinance § 31-35(b).  In turn,

---

coercion is defined under the Free Speech Ban to encompass a number of actions which, arguably, protect public safety, but are duplicative of other, existing penal statutes:[7]

COERCION means:

(A)     to approach or speak to a person in such a manner as would cause a reasonable person to believe that the person is being threatened with:

(i)     imminent bodily injury; or

(ii)    the commission of a criminal act upon the person or another person, or upon property in the person's immediate possession;

(B)     to persist in solicitation after the person solicited has given a negative response;

(C)     to block, either individually or as part of a group of persons, the passage of a solicited person; or

(D)     to engage in conduct that would reasonably be construed as intended to compel or force a solicited person to accede to demands.[8]

*See* Free Speech Ban, § 31-35(a)(3).

23.     Additionally, the Free Speech Ban prohibits solicitation to any person placing or preparing to place money in a parking meter, Free Speech Ban § 31-35(e), as well as solicitation within 25 feet of an automated teller machine, entrance or exit of a financial institution, a public pay telephone, a self-service car wash or fuel pump, a public transportation stop, or an outdoor dining area of a fixed food establishment, Free Speech Ban § 31-35(f)(1)–(7).

\*          \*          \*

---

[7] Texas law penalizes theft by threat as robbery. TEX. PEN. CODE ANN. § 29.02 (a)(2) (West) ("A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.").

[8] In Texas, theft is defined as appropriation without consent, such as by force. TEX. PEN. CODE ANN. § 31.03 (a)(b)(1-2) (West).

24.     An offense of the Free Speech Ban "is punishable by a fine not to exceed $500." *See* **Exhibit A** (Free Speech Ban, § 31-35(i)).  Nowhere in Section 31-35 does it authorize the arrest of any person charged with an offense of the Free Speech Ban.

25.     The Free Speech Ban prohibits speech based solely on the content of the speech by forbidding any inquiry requesting any contributions, alms, charity, or gifts of any items of value but allowing all other types of speech.

**C.     Plaintiff's Arrest under the Free Speech Ban.**

26.      Plaintiff was arrested on February 13, 2016 and February 20, 2016 for allegedly violating the Free Speech Ban.  Specifically, Plaintiff was located on a sidewalk in Deep Ellum in southeast Dallas when she was arrested.  Plaintiff was wearing her standard protest attire bearing symbols and references to medical marijuana.  She was also peaceably holding her signature cardboard sign which reads "Will Rap 4 Weed."  After her arrest for violating the Free Speech Ban, Plaintiff was transported by the Dallas Police Department to the Dallas County Jail and segregated from the Dallas County inmates—instead, being placed in a holding cage described as similar to a dog cage. During her transportation, Plaintiff was placed in the rear of a "patty wagon" while the officers continued to arrests other persons. This took nearly an hour. During that time she was forced to place her weight on her hands to keep herself from falling forward onto her face, which caused injury to her right shoulder.

27.     After her first arrest on February 13, 2016, Plaintiff was told that failing to enter into a plea of guilty would mean that her detention would continue until February 17, 2016. Given the conditions of her detention, and her inability to speak to legal counsel, Plaintiff entered a plea of no contest in exchange for a release based on time served.  Plaintiff was released shortly after entering her plea and subsequently obtained legal counsel.  Nevertheless,

on February 20, 2016, Plaintiff was arrested again for allegedly violating the Free Speech Ban. After her second arrest, Plaintiff was again transported by the Dallas Police Department to the Dallas County Jail where she re-aggravated her shoulder injury while sleeping on concrete. Once detained, she entered a plea of no contest in exchange for a release based on time served.

28.     Plaintiff's arrests and conviction are unconstitutional.   First, there was no probable cause to support a warrantless arrest as Plaintiff was not committing offense as such is defined in the Free Speech Ban.   Moreover, violations of the Free Speech Ban are punishable only by a fine, and each of Plaintiff's arrest were extraordinary.   As a result, Plaintiff's arrests constitute an unreasonable seizure in violation of her Fourth Amendment rights.   Moreover, the Free Speech Ban is facially unconstitutional on the grounds that it is vague and overbroad in its infringement upon Plaintiff's right to free speech under both the Texas and United States Constitutions.   The Free Speech Ban is not only facially unconstitutional, but as applied to the present case is a clear infringement upon Plaintiff's free speech.

29.     On information and belief, Plaintiff alleges that if she continues her political activism in any public spaces in the City of Dallas, she will again be arrested and will receive another citation and/or penalties for violating the Free Speech Ban.

30.     In fact, the Dallas Police Chief U. Renee Hall at the City of Dallas public safety committee meeting on January 8, 2018 sought to clear up any confusion about her department's enforcement of the city's anti-panhandling ordinance by stating: "We are in no way stepping back from our responsibility."   *See* Jack Fink, *DPD Chief Seeks to Clear-Up Confusion Over Anti-Panhandling Ordinance*, Dallas CBS11, Jan. 8, 2018, http://dfw.cbslocal.com/2018/01/08/anti-panhandling-ordinance/ (last visited Jan. 9, 2018).   Chief Hall then said police will still

prosecute aggressive panhandlers who threaten or assault people. *See id.* As of the date of this filing, Section 31-35 is still on the books in the City of Dallas, Texas Code of Ordinances.

## V.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff hereby realleges and incorporates by reference all above-stated paragraphs.

32.     Plaintiff brings this action on behalf of herself and all others similarly situated under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following class: all people in Dallas who have been arrested or received a citation for violating the Free Speech Ban, Section 31-35 of the Code of Ordinances of the City of Dallas, Texas.

33.     This action is brought and may properly be maintained as a class action under Rule 23(a)(1)–(a)(4) and Rule 23(b)(2).

**A.      The Proposed Class Satisfies Rule 23(a).**

34.     Members of the proposed class are so numerous that joinder is impracticable. On information and belief, as of April 24, 2016, at least 39,665 arrests or citations have been issued under the authority of the Free Speech Ban. On information and belief, that number has grown greatly since the initial April 24, 2016 disclosure of the 39,655 people arrested or cited.

35.     Joinder is also impracticable because membership in the large proposed class is fluid. People enter the proposed class every day. Monitoring for these changes, and joining and dismissing plaintiffs repeatedly, would not be a practical way to manage this litigation.

36.     The relief sought is common to all members of the proposed class, and common questions of law and fact exist as to all members of the class. Plaintiff seeks prospective relief from enforcement of the Free Speech Ban on a class-wide basis.

37.     Among the most important, but not the only, common questions of law and fact are: (a) whether the Free Speech Ban unconstitutionally vague, overbroad, or unconstitutional as applied; (b) whether it is reasonable to restrict life-sustaining conduct for many people in Dallas by silencing them completely in order to shield more fortunate people from speech that makes them uncomfortable; and (c) whether prospective relief is appropriate to stop the City of Dallas from violating Plaintiff's rights.

38.     The named Plaintiff's claims are typical of the claims of the proposed class members, and they have the same interests as all other members of the proposed classes that they represent.  The named Plaintiff's claims arise from the same course of conduct as claims of the proposed classes, and their claims are based on the same legal theories as those of the proposed classes.

39.     The named Plaintiff is an adequate representative of the proposed class because she is a member of the class and because her interests coincide with, and are not antagonistic to, those of the class.

40.     Plaintiff is familiar with the City of Dallas' ordinances and practices challenged here and the constitutional protections she seeks to vindicate.  Plaintiff is prepared to respond to discovery requests in this case.  Plaintiff is committed to fulfilling the role and duties of a class representative protecting the fundamental constitutional rights of all Dallas residents.

41.     The named Plaintiff is represented by the Law Offices of Ramon De Jesus Rodriguez.  An affidavit from Plaintiff's counsel describing their qualifications will accompany a motion for class certification.  The named Plaintiff and her attorneys will fairly and adequately protect the interests of the members of the class.

**B.      General Applicability, Rule 23(b)(2).**

42.      Class action status is appropriate because Defendant has acted and refused to act on grounds generally applicable to the proposed class.  Defendant's ordinances apply equally to the class regardless of differences among class members.

43.      Plaintiff seeks final injunctive and declaratory relief protecting her from violation of her constitutional rights.

44.      Injunctive and declaratory relief with respect to each claim would be appropriate to the class as a whole.  All members of the proposed class are entitled to the constitutional protections Plaintiff seeks to enforce.

**C.      Predominance and Superiority, Rule 23(b)(3).**

45.      The predominant questions in this case are whether municipal laws violate the proposed class members' constitutional rights.  This question is susceptible to generalized, class-wide proof.  There is no individualized evidence or legal argument required to succeed on such a claim.

46.      A class action is superior to alternative methods of trying individual claims.  In this case, there is no realistic alternative for members of the proposed classes to try their claims. As people who are cited or arrested under the Free Speech Ban are people whose circumstances have forced them to engage in conduct that falls within the Free Speech Ban, members of the proposed class are not likely to be able to invest the resources necessary to retain an attorney or bring the claims *pro se*.

*          *          *

## VI.

## CLAIMS

**A.     Count 1 – Violations of Plaintiff's Right to Freedom of Speech, 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.**

47.     Plaintiff hereby realleges and incorporates by reference all above-stated paragraphs.

48.     Plaintiff brings this claim on behalf of herself and the prospective class.

49.     By reason of the aforementioned, Defendant's Free Speech Ban amended, created, adopted, and enforced under color of state law, has prohibited and continues to prohibit Plaintiff from exercising her right to engage in free speech in a traditional public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### i.     *The Free Speech Ban is Unconstitutionally Vague.*

50.     Defendant's Free Speech Ban is unconstitutionally vague because there is no way an ordinary or reasonable person would know how the City of Dallas construes "passive acts" or "nonverbal acts" in comparison to "solicitation" as defined under the Free Speech Ban.  Thus, the definition of "solicitation" restricted by the silencing provision does not provide a person of ordinary intelligence fair notice of what conduct is prohibited.  It is so all-inclusive as to put nearly unfettered discretion in the hands of a police officer who sees a person communicating with someone between sunset and sunrise.

51.     The definition of "solicitation" under the Free Speech Ban does not provide a person of ordinary intelligence fair notice of what conduct triggers a duty to conduct only

---

"passive acts" or "nonverbal acts."  It is so all-inclusive that anyone performing any act for more than a moment is subject to arrest on an officer's whim.

52.     Since the Free Speech Ban envelopes myriad protected speech and expression in failing to specifically define all its operable terms, the Free Speech Ban is unconstitutionally vague and chills protected free speech.

### ii.     The Free Speech Ban is Unconstitutionally Overbroad.

53.     Defendant's Free Speech Ban is not a reasonable time, place and manner restriction insofar as the law restricts speech with content that qualifies as "solicitation," defined so broadly that it sets no clear bounds:

> Solicitation "means to ask, beg, solicit, or plead, whether orally or in a written or printed manner, for the purpose of receiving contributions, alms, charity, or gifts of items of value for oneself or another person."

*See* Free Speech Ban, Section 31-35(a)(10).

54.     Defendant's Free Speech Ban is not narrowly tailored to serve a significant governmental interest.  It is overbroad insofar as it mandates a blanket prohibition on panhandling at night or within certain areas of the City of Dallas—both geographically predefined or within 25 feet of certain objects or establishments.  Defendant's Free Speech Ban is also overbroad insofar as it overlaps with conduct subject to prosecution under existing criminal laws.

55.     Defendant's Free Speech Ban does not adequately allow for alternative means of effective exercise of Plaintiff's free speech rights.

56.     Defendant's Free Speech Ban encompasses peaceful free speech that is not threatening, violent, or unsafe.

57.     Defendant's Free Speech Ban prevents and deters Plaintiff from engaging in constitutionally protected speech, thereby inflicting continuing injury to Plaintiff.

58.     As a result of the overbreadth of Defendant's Free Speech Ban, a high probability exists that Defendant will engage in over-enforcement of the free speech ban in a manner which unavoidably criminalizes constitutionally protected activity.

### iii.     The Free Speech Ban is Unconstitutional As Applied.

59.     Plaintiff engaged and planned to further engage in constitutionally protected speech on a public sidewalk when she was arrested and therefore prohibited from exercising her right to constitutionally protected speech due to Defendant's Free Speech Ban.

60.     Plaintiff was arrested, held in confinement and criminally prosecuted with sanctions for her constitutionally protected free speech due to Defendant's Free Speech Ban.

61.     Plaintiff's free speech has not caused a public nuisance, disturbed the peace or otherwise created a public safety or traffic safety risk.

62.     Defendant's Free Speech Ban is content-based, targeting the political speech and message of Plaintiff.

63.     Plaintiff reasonably fears that if she were to exercise her right to constitutionally protected free speech in public in the City of Dallas, Plaintiff would be arrested and/or criminally charged under Defendant's Free Speech Ban.

64.     As a direct and proximate result of Defendant's Free Speech Ban, Plaintiff's free speech is chilled and she is deterred from exercising her constitutionally protected free speech rights.

*          *          *

---

65.     Plaintiff seeks a declaration from this Court that Defendant's Free Speech Ban is constitutionally invalid either on its face as it is vague and overbroad, or as it has been unlawfully applied to Plaintiff's peaceful free speech activities.

66.     Plaintiff seeks preliminary and permanent injunctive relief against the enforcement of Defendant's Free Speech Ban so that she can return to engaging in peaceful, constitutionally protected speech in a traditional public forum in the City of Dallas without fear of criminal citation, penalties, and/or arrest.

67.     If the City of Dallas is not enjoined from enforcing the Speech Ordinance, Plaintiff will be irreparably harmed.  Plaintiff is now suffering a continuous injury due to the enforcement of the Speech Ordinance, because she in unable to communicate her message.

68.     Plaintiff has no plain, speedy, and adequate remedy at law.  Damages are indeterminate or unascertainable and, in any event, would not fully redress Plaintiff's harm. Accordingly, injunctive relief is appropriate.

**B.      Count Two – Violations of Plaintiff's Right Against Unreasonable Search and Seizure, 42 U.S. C. § 1983 and Fourth Amendment to the U.S. Constitution.**

69.     Plaintiff hereby realleges and incorporates by reference all above-stated paragraphs.

70.     Plaintiff brings this claim on behalf of herself and the prospective class.

71.     Plaintiff was deprived of her rights under the Fourth Amendment when she was arrested under Defendant's Free Speech Ban.  Specifically, the City of Dallas Police Department, acting as agent of Defendant intentionally seized the Plaintiff's person under the Free Speech Ban, and the seizure was unreasonable insofar as the Free Speech Ban is unconstitutional and there was no probable cause justifying a warrantless arrest.

72.     Defendant's continued threatened seizures under the Free Speech Ban violate the right against unreasonable seizures under the Fourth Amendment of the United States Constitution.

73.     In the absence of prospective relief, Plaintiff and class members are likely to suffer seizure of their property in violation of the right against unreasonable seizures.  On behalf of herself and the prospective class, Plaintiff seeks declaratory and injunctive relief against the City of Dallas.

### C.     Count Three – Injunctive Relief, Temporary Restraining Order and Preliminary Injunction.

74.     Plaintiff hereby realleges and incorporates by reference all above-stated paragraphs.

75.     Plaintiff brings this claim on behalf of herself and the prospective class.

76.     The purpose of a temporary restraining order ("**TRO**") is to preserve the status quo of the subject matter of the litigation and prevent irreparable harm until a hearing can be held on a preliminary injunction.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see* FED. R. CIV. P. 65(b).  The status quo is the last peaceable, non-contested status that preceded the controversy.  *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994).   There are four prerequisites to obtain a TRO or preliminary injunction.  A plaintiff is entitled to relief where she can demonstrate: (1) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which she has no adequate remedy at law; (iii) that greater injury will result from denying the TRO than from its being granted; and (iv) that a TRO will not disserve the public interest.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

---

77.     There is a substantial likelihood that Plaintiff will establish at trial that Section 31-35 is an unconstitutional content-based restriction on free speech which violates the First and Fourteenth Amendments.  There is also a substantial likelihood that Plaintiff will establish at trial that her arrest for violation of Section 31-35(c) was an unconstitutional search and seizure in violation of the Fourth Amendment.  *See* Plaintiff's Brief in Support of TRO, attached hereto as **Exhibit B** and incorporated by reference herein.  As a result, there is also a substantial likelihood that Plaintiff will prevail under her § 1983 claims at trial.

78.     A TRO is necessary to preserve the status quo, to prevent the irreparable injury to the public that would result from Defendant's continued enforcement of Section 31-35(c) pending the outcome of this matter, and to allow the Court to render effective relief if the Plaintiff prevails at trial.  Indeed, Plaintiff would have no adequate remedy at law, and this Court's ability to fashion effective relief would be significantly impaired, if Defendant proceeds with enforcement of a law that is found, after trial, to be unconstitutional.

79.     Any harm to Defendant from enjoining the continued enforcement of the Free Speech Ban (Section 31-35(c)) pending the outcome of this matter would be outweighed by the actual and potential harm to the general public that would result from the TRO being denied. The risk of continued citation, arrest and prosecution of individuals under a potentially unconstitutional law is a harm of the greatest magnitude.

80.     Granting the requested TRO and preliminary relief will serve the public interest.

81.     A proposed order for the TRO is attached hereto as **Exhibit C** and incorporated by reference herein.

*          *          *

**D.**      **Count Four – Declaratory Relief.**

82.      Plaintiff hereby realleges and incorporates by reference all above-stated paragraphs.

83.      Plaintiff brings this claim on behalf of herself and the prospective class.

84.      The facts alleged in this case as alleged establish that, under all the circumstances, there is a substantial controversy between parties having adverse legal interests which is of sufficient immediacy and reality as to warrant the issuance of a declaratory judgment.

85.      Plaintiff is entitled to a declaration that the Free Speech Ban is an unconstitutional content-based restriction on free speech in violation of the First and Fourteenth Amendments of the U.S. Constitution.

86.      Plaintiff is entitled to a declaration that the conduct described herein violated Plaintiff's constitutional rights as alleged under the First, Fourth and Fourteenth Amendments of the U.S. Constitution.

## VII.

### RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff Yvette "Will Rap 4 Weed" Gbalazeh respectfully requests that the Court:

A.      Assume jurisdiction over this matter;

B.      Enter an order certifying the proposed class;

C.      Enter a preliminary and permanent injunction enjoining Defendant from applying and enforcing its unconstitutional Free Speech Ban against Plaintiff as described above substantially in conformance with the attached **Exhibit C**;

---

D.      Enter a judgment and decree declaring that Defendant's Free Speech Ban unconstitutionally denies Plaintiff of her rights to free speech as described above;

E.      Award Plaintiff monetary damages to compensate them for their present and continuing loss of free speech in the City of Dallas, and for all other actual injuries Plaintiff has suffered as a result of Defendant's conduct with respect to its Free Speech Ban;

F.      Award Plaintiff her reasonable attorneys fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

G.      Grant any such further relief as the Court finds is appropriate.

## VIII.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Date: January // , 2018

Respectfully submitted,

**LAW OFFICES OF RAMON RODRIGUEZ**
Providence Towers
5001 Spring Valley Rd.,
Suite 400E
Dallas, Texas 75244
Telephone:  (972) 383-1510
Telecopier:  (972) 692-7719
Ramon@rrtxlaw.com

By:  /s/Ramon de Jesus Rodriguez
       Ramon de Jesus Rodriguez
       State Bar No. 24088319

**ATTORNEY FOR PLAINTIFF**

---

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF DALLAS** §

### UNSWORN DECLARATION PURSUANT TO 28 U.S.C. § 1746

My name is Yvette Yah Gbalazeh.  I am above the age of 18 and fully competent to make this declaration.  This Unsworn Declaration is made under oath, pursuant to 28 U.S.C. § 1746. All facts stated herein are within are within my personal knowledge and are true and correct.

I am the Plaintiff in the above-styled and numbered cause.  I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief and Application for Temporary Restraining Order and Preliminary Injunction, and all of the facts stated therein are true and correct.

My date of birth is _March 27, 1981_.  My address is _5123 Echo Ave_ _Dallas, TX  75215_.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed at Dallas, Dallas County, Texas on this _11th_ day of January, 2018.

Yvette Yah Gbalazeh