IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YVETTE GBALAZEH, LEE SUNBURY, and<br>FRED SIMS, on behalf of themselves and<br>all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIV. CASE NO. 3:18-cv-00076-N |
| CITY OF DALLAS, TEXAS, a municipality of<br>the State of Texas, | § § § | |
| Defendant. | § | <u>JURY TRIAL DEMANDED</u> |

**PLAINTIFFS' THIRD AMENDED**
**<u>CLASS ACTION COMPLAINT AND JURY DEMAND</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID GODBEY:

COME NOW, Plaintiffs YVETTE GBALAZEH, LEE SUNBURY, and FRED SIMS, on

behalf of themselves and a class of all others similarly situated (collectively, "**Plaintiffs**"), file this

Third Amended Class Action Complaint (this "**Complaint**"), and in support respectfully allege as

follows:

**I.**
**<u>INTRODUCTION</u>**

*"Break their backs, break their spirit — that's the only way we're going to win this*
*battle," [Dallas City] council member Rick Callahan said Monday [November 10,*
*2014] during a meeting of the [City of Dallas] Quality of Life Committee.*

*Callahan called panhandlers "nonconformists" and compared them setting down*
*belongings to dogs urinating on cars.*

*He said "I don't care" if officers said they had more serious crimes to address.*
*"This is affecting the shopping and the well-being of my area."*

*Callahan said he wants panhandlers ticketed and jailed as many times as it takes to make them leave."*

*– Rickey D. Callahan, Dallas City Council, District 5, at a November 10, 2014 meeting of the Quality of Life Committee.[1]*

1.      Defendant has engaged in the systematic evisceration of the constitutional rights of thousands of destitute, poor and homeless persons in order to remove these people from areas where they are deemed a nuisance and undesirable for new housing and economic development in certain Dallas areas.[2] While the City of Dallas faces growing concern over the plight of the poor and homeless,[3] this is not a legal basis for treating this vulnerable class as though their civil rights are non-existent.

2.      This case is a civil rights, class action brought under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, seeking redress

---

[1] *See* Elizabeth Findell, *Dallas Council Members Call for Panhandling Crackdown*, DALLAS MORNING NEWS, Nov. 10, 2014, https://www.dallasnews.com/news/news/2014/11/10/dallas-council-members-call-for-panhandling-crackdown (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 1** and incorporated herein by reference. This a far different message than many of our families received when first arriving in this country: "*Give me your tired, your poor, your huddled masses yearning to breathe free, the wretched refuse of your teeming shore. Send these, the homeless, tempest-tossed to me, I lift my lamp beside the golden door!*"

[2] *See id.* ("*This is affecting the shopping and the well-being of my area.*").

[3] *See* Robert Wilonsky and Tristan Hallman, *Dallas' Homeless Problem Grew While City Officials Took Eye Off the Ball, Audit Claims*, DALLAS MORNING NEWS, Dec. 11, 2017, https://www.dallasnews.com/news/dallas-city-hall/2017/12/11/dallas-homeless-problem-grew-city-officials-took-eye-ball-audit-claims (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 2** and incorporated herein by reference. *See also* Tasha Tsiaperas, *How Many Homeless Live on Streets? The Number Jumped 23% This Year*, Dallas Morning News, Mar. 21, 2018, https://www.dallasnews.com/news/social-justice-1/2018/03/21/homelessness-rise-living-dallas-streets-not-shelters-really-spiked (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 3** and incorporated herein by reference.

for the deprivation of these constitutional rights and violations of law caused by Defendant as part of Defendant's sustained crackdown on the destitute, poor and homeless with the enactment and enforcement of: (1) Section 31-35 of the Code of Ordinances of the City of Dallas, Texas (the "**Free Speech Ban**" also known as the "**Panhandling Ordinance**"); and (2) Section 28-63.3 of the Dallas Code of Ordinances (the "**Vehicle Panhandling Ordinance**") (collectively, the "**Challenged Ordinances**").[4] A true and correct copy of the Free Speech Ban and Vehicle Panhandling Ordinance are attached to Plaintiffs' Appendix as **Exhibit 4** and **Exhibit 5**, respectively, and incorporated by reference herein.

3.    Additionally, Plaintiffs seek relief under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, seeking redress for the deprivation of these constitutional rights and violations of law caused by Defendant in the enforcement of Texas Transportation Code § 552.007 ("**Section 552.007**") which was found unconstitutional under the First and Fourteenth Amendments in *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779, 798, 801–02 (S.D. Tex. 2013).

---

[4] This crackdown is the latest in the Dallas City Council's well-chronicled attempts to remove poor and homeless people from Dallas—with the City having gone as far as enacting a ban on charity groups from feeding the homeless except for certain designated sites. That ordinance was struck down by United States District Judge Jorge Solis in 2013. *See* Eric Nicholson, *Federal Judge: Dallas Ministries Can Feed the Homeless Wherever They Damn Well Please*, DALLAS OBSERVER, Mar. 29, 2013, http://www.dallasobserver.com/news/federal-judge-dallas-ministries-can-feed-the-homeless-wherever-they-damn-well-please-7135775 (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 6** and incorporated herein by reference. *See also* Eric Nicholson, *Dallas Police Are Now Rounding Up Homeless People for "Sleeping in Public" Downtown*, DALLAS OBSERVER, Feb. 5, 2014, https://www.dallasobserver.com/news/dallas-police-are-now-rounding-up-homeless-people-for-sleeping-in-public-downtown-7121564 (last visited Aug. 20, 2018) (discussing DPD early-morning "sweeps" or "roundups" of the Central Business District arresting people caught sleeping on sidewalks, benches, and stoops). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 7** and incorporated herein by reference.

4.     Plaintiffs contend that the Challenged Ordinances and Section 552.007 serve no legitimate or compelling lawful government interest, and are not sufficiently narrowly tailored, even accepting, *arguendo*, that such a lawful compelling interest exists. Plaintiffs further contend that the Challenged Ordinances and Section 552.007 target Plaintiffs' conduct and/or activities which are almost identically deemed as "solicitations" under each of the Challenged Ordinances and Section 552.007. Additionally, the Challenged Ordinances and Section 552.007 similarly target solicitation within overlapping specified geographic areas in the City of Dallas.

5.     Indeed, the enforcement of the Challenged Ordinances and Section 552.007 have led to open season on anyone in Downtown Dallas who appears to be destitute.[5] The Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 sweep within their coverage many forms of innocent and constitutionally-protected activity—both the seeking of alms and the exercise of political free speech—thereby giving Defendant the unconstitutional free reign to make arbitrary and discriminatory determinations regarding implementation of the law and thus who is and is not allowed to exist in those public spaces that the Defendant has deemed worthy of protection.

6.     The effect and application of the Challenged Ordinances and Section 552.007, and the policies, practices and conduct of Defendant in their enforcement of the same, has been that any persons who might appear poor or destitute to Dallas Police Officers have been prohibited from seeking support from the general public because their message is unpopular or

---

[5] *Compare Footnotes 1, 2 3, and 4 supra with* Eric Nicholson, *Local Software Engineer Threatened with Ticket for Meditating Downtown*, DALLAS OBSERVER, Apr. 28, 2016, http://www.dallasobserver.com/news/local-software-engineer-threatened-with-ticket-for-meditating-downtown-8251093 (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 8** and incorporated herein by reference.

uncomfortable; however, panhandling is a protected act of expression which is —like the act of seeking shelter—life-sustaining conduct for some of Dallas's less fortunate residents, many of whom rely on charitable alms as their sole source of money. These laws and practices literally silence these Dallasites in order to shield more fortunate people from people and speech that make them uncomfortable. Moreover, the restrictions on speech and Defendant's policies, practices and conduct, in conducting Defendant's homeless "sweeps" or "roundups",[6] constitute blatant violations of the First, Fourth, and Fourteenth Amendments.

7.      In addition to these constitutional deprivations, the policies, practices and conduct ratified, approved and implemented by Defendant—actions which continue to present—have also resulted in physical and mental harms to Plaintiffs and the thousands of similarly-situated destitute persons in the City of Dallas.

8.      Plaintiffs, on behalf of themselves and the class of other similarly-situated destitute persons in the City of Dallas, claim that the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 constitute unconstitutional restrictions on free speech in violation of their federal constitutional right to free speech under the First Amendment.[7] *See Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779, 798, 801–02 (S.D. Tex. 2013).

---

[6] *See* **Exhibit 7** (discussing DPD early-morning "sweeps" or "roundups" of the Central Business District arresting people caught sleeping on sidewalks, benches, and stoops).

[7] *See* Robert Wilonsky, *Woman Who 'Will Rap 4 Weed' Sues Dallas Over Panhandling Ordinance It Can't Enforce*, DALLAS MORNING NEWS, Jan. 18, 2018, https://www.dallasnews.com/opinion/commentary/2018/01/18/woman-will-rap-4-weed-sues-dallas-panhandling-ordinance-cant-enforce (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 9** and incorporated herein by reference. *See also* Stephen Young, *Despite Changes, Dallas Panhandling Enforcement Still Probably Illegal*, DALLAS OBSERVER, Jan. 5, 2018, http://www.dallasobserver.com/news/dallas-on-shakey-legal-ground-with-panhandling-bans-10228403 (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 10** and incorporated herein by reference. *See also* Eric Nicholson, *Dallas Is Probably Screwed If It Gets Sued over New Panhandling*

9.      Plaintiffs, on behalf of themselves and other similarly-situated destitute persons in the City of Dallas, claim that the policies, practices, and conduct employed by Defendant in enforcing the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 violate the Fourth Amendment ban on unreasonable searches and seizures. *See Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013).

10.     Plaintiffs, on behalf of themselves and other similarly-situated destitute persons in the City of Dallas, seek injunctive relief enjoining Defendant from enforcing the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007, as well as enjoining Defendant from engaging in the mass-scale, indiscriminate searches and seizures of their person known as Defendant's homeless "sweeps" or "roundups" as these wide-spread and continuing policies and practices, which have been ratified, approved, and implemented by Defendant, violate Plaintiffs' and Plaintiff Class' federal constitutional rights pursuant to the Fourth and Fourteenth Amendments.

11.     Plaintiffs, on behalf of themselves and other similarly-situated destitute persons in the City of Dallas, seek a declaratory judgment stating that the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007, are unlawful under the federal constitutional rights enumerated herein.

---

*Crackdown*, DALLAS OBSERVER, Feb. 3, 2016, *http://www.dallasobserver.com/news/dallas-is-probably-screwed-if-it-gets-sued-over-new-panhandling-crackdown-7990354* (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 11** and incorporated herein by reference. *See also* Stephen Young, *Dallas' Panhandling Situation Isn't Nearly as Complicated as the Police Chief Makes it Sound*, DALLAS OBSERVER, Jan. 9, 2018, http://www.dallasobserver.com/news/dallas-panhandling-policy-update-its-ok-to-beg-mostly-10239378 (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 12** and incorporated herein by reference.

12.     Plaintiffs, on behalf of themselves and other similarly-situated destitute persons in the City of Dallas, further seek a declaratory judgment stating that the policies and practices of Defendant as alleged herein are unlawful under the federal constitutional rights enumerated herein.

13.     The deprivation of Plaintiffs' constitutional rights as described herein is actionable under 42 U.S.C. § 1983. The allegations herein relate to the Challenged Ordinances and Section 552.007 and the actions and practices of those entities, persons, their predecessors and/or successors, who, while acting in their capacity as representatives of the City of Dallas, have enforced the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007, or any other law in such an unconstitutional manner. All acts alleged herein were committed by Defendants under the color of state law and municipal authority.  Plaintiffs seek injunctive relief, declaratory relief, compensatory and punitive money damages, and attorneys' fees pursuant to 42 U.SC. §§ 1983 and 1988.

## II.
## JURISDICTION AND VENUE

14.     This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

15.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) and 1367. Jurisdiction supporting the claim for attorney fees is conferred by 42 U.S.C. § 1988.

16.     The acts complained of occurred in the Northern District of Texas and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

17.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.SC. §§ 2201 and 2202, by Rule 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.  Plaintiffs' claims for damages are authorized under 42 U.S.C. § 1983 and by the general legal and equitable powers of this Court.

## III.
## DEMAND FOR JURY TRIAL

18.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury.

## IV.
## PARTIES

19.     Plaintiff Yvette "Will Rap For Weed" Gbalazeh is a political activist and resident of the City of Dallas, Texas. Ms. Gbalazeh has been cited and arrested under the Challenged Ordinances and subjected the policies, practices and conduct complained of herein.

20.     Plaintiff Lee Sunbury is a resident of the City of Dallas, Texas. Mr. Sunbury has been cited and arrested under the Challenged Ordinances and Section 552.007 and subjected the policies, practices and conduct complained of herein.

21.     Plaintiff Fred Sims is a resident of the City of Dallas, Texas. Mr. Sims has been cited and arrested under the Challenged Ordinances and subjected the policies, practices and conduct complained of herein.

22.     Together, Plaintiffs Gbalazeh, Sunbury and Sims constitute the named Plaintiffs on behalf of a class of mostly indigent individuals who have been cited or arrested under either of the Challenged Ordinances or Section 552.007 during any relevant time period in this matter and seek vindication of various rights and guarantees under the United States Constitution on behalf of all Dallasites.

23.     Plaintiffs are informed and believe that the acts of Defendant detailed herein were undertaken in the execution of customs, policies and practices of authorized policymakers of the City of Dallas and were joined in and/or implemented by other branches or arms of Defendant, and each of them, acting as the agent, servant, employee and/or in concert, and/or in conspiracy

with each of said other branches or arms of Defendant. Defendant, through its branches or arms, caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries by, among other things, participating in said conduct or acting jointly or conspiring with others who did so; by authorizing, acquiescing or setting in motion policies, plans and actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing and refusing with deliberate indifference to maintain adequate training and supervision; and by ratifying the unlawful conduct taken by employees under their direction and control, including failing to take remedial and disciplinary actions.

24.     The acts complained of herein were intentionally and jointly committed by Defendant and the branches or arms of Defendant and will continue to be committed jointly and systematically by Defendant and the branches or arms of Defendant unless an injunction is issued by this Court.

25.     Defendant City of Dallas, Texas is a municipal governmental authority and a subdivision of the State of Texas. The City includes, without limitation, the Dallas City Council, Dallas Police Department ("**DPD**"), and the Dallas Municipal Court System ("**DMCS**") and all officials, agents, employees and other representatives acting under color of law.[8] In addition, at all relevant times, Defendant was responsible for enforcing the rules of the DPD and DMCS, and for ensuring that DPD and DMCS personnel obey the laws of the United States and the State of Texas. Defendant has appeared through counsel accepted service.

---

[8] As a municipality, the City of Dallas is a "person" subject to suit under 42 U.S.C. § 1983 and can be sued. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Additionally, there is no sovereign immunity bar where the complainant seeks injunctive relief. *See Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975).

26.     During all times mentioned in this Complaint, Defendant engaged in acts and/or omissions which constituted deprivations of Plaintiffs' constitutional rights, and the privileges and immunities of the Plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property and/or ensuring civil order.

## V.
## FACTUAL ALLEGATIONS

### A.     Plaintiff Yvette Gbalazeh

27.     Plaintiff Yvette Gbalazeh is a political activist who exercises her rights to free speech and free assembly by advocating for medical marijuana reform and legalization and, in this case, representing a class of persons whose constitutional rights have been violated.  A true and correct copy of the Declaration of Yvette Gbalazeh is attached to the Appendix hereto as **Exhibit 13** and incorporated by reference herein. Ms. Gbalazeh shares her message at city council meetings, criminal justice advisory board meetings, and the Dallas County Commissioner's Court. She has even spoken with Dallas County Sheriff Lupe Valdez and appeared in front of nationwide television audiences in support of her cause. Additionally, Ms. Gbalazeh brings awareness to the issue through lyrical performance in traditional public forums. As part of her performance and in order to maximize her audience, Ms. Gbalazeh utilizes a homemade cardboard sign that contains the slogan behind her mission: "*Will Rap 4 Weed*." Ms. Gbalazeh has regularly engaged in and wishes to continue to engage in lawful, peaceful free speech in the City.

28.     Ms. Gbalazeh's political activism stems from her personal battle with an eating disorder since she was 15 years old. In the early 2000s, Ms. Gbalazeh moved to California where she became a medical marijuana patient, on the advice of doctors who informed her that the drug

might help her deal with the symptoms, but whose hands were tied because they were situated in Texas where marijuana is illegal. After receiving her patient card, nearly ten years after her initial diagnosis, she found that the drug was effective at easing her symptoms and enabling her to overcome the disease. This inspired Ms. Gbalazeh's activism and birthed the idea for using the slogan "Will Rap 4 Weed" to help spread her message.

29.     In 2013, Ms. Gbalazeh moved to the Houston, Texas area and continued her activism for hers and other patients' rights for medical marijuana.[9] Ms. Gbalazeh's "Will Rap 4 Weed" message went viral and she was chosen by the *Houston Chronicle* as one of Houston's 43 most fascinating people.[10] Local media outlets began running reports about the "Will Rap 4 Weed" activist, she performed her street rap on the George Lopez show, and she also made an appearance on Jerry Springer's show "Baggage."[11]

30.     Later in 2013, Ms. Gbalazeh moved to Dallas and continued her boots-on-the-ground campaign on the various street corners of Deep Ellum in southeast Dallas. Despite receiving threats and hostility from various individuals who disagree with her message, Ms. Gbalazeh has continued her political activism by invoking her constitutional right to protest what she feels is not just a civil rights violation but a human rights issue as there are patients receiving

---

[9] *See* Craig Hlavaty, *'Will Rap 4 Weed' Sign is a Political Statement, Not a Request*, HOUSTON CHRONICLE, Sept. 3, 2013, http://blog.chron.com/thetexican/2013/09/will-rap-4-weed-sign-is-a-political-statement-not-a-request/ (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 14** and incorporated herein by reference.

[10] *See Houston's 43 Most Fascinating People*, HOUSTON CHRONICLE, http://www.chron.com/life/slideshow/Houston-s-43-most-fascinating-people-75322/photo-5550408.php (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 15** and incorporated herein by reference.

[11] *See* Yvette Gbalazeh, *Will Rap 4 Weed with George Lopez and Jerry Springer*, YOUTUBE, Jun. 25, 2012, https://www.youtube.com/watch?v=DkLM8gGXto4 (last visited Aug. 20, 2018).

medical marijuana in other states which have already legalized it. Ms. Gbalazeh's activism is a full-time job insofar as she attends city council meetings, advisory board meetings and other government functions related to her mission.[12]

31.    Ms. Gbalazeh was arrested on February 13, 2016 and February 20, 2016 for allegedly violating the Vehicle Panhandling Ordinance.[13] Specifically, Ms. Gbalazeh was located on a sidewalk in Deep Ellum after sunset in southeast Dallas when she was arrested. While Ms. Gbalazeh was arrested under the Vehicle Panhandling Ordinance, upon information and belief Ms. Gbalazeh's conduct would have similarly qualified for citation under the Free Speech Ban due to the time and/or location of her arrest. Ms. Gbalazeh was wearing her standard protest attire bearing symbols and references to medical marijuana. She was also peaceably holding her signature cardboard sign which reads "Will Rap 4 Weed"—while on a sidewalk adjacent to a public roadway in Deep Ellum after sunset.

---

[12] *See* Amber Joseph, *Weed Activist Running for Texas Governor to Re-Legalize*, CROSSROADS TODAY NEWSCENTER, December 7, 2017, http://www.crossroadstoday.com/story/37016934/weed-activist-running-for-texas-governor-to-re-legalize (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 16** and incorporated herein by reference.

[13] Ms. Gbalazeh's Verified Original Complaint mistakenly alleged she was arrested for violating the Free Speech Ban. Ms. Gbalazeh was actually cited for the Vehicle Panhandling Ordinance. As alleged herein, the Vehicle Panhandling Ordinance and the Free Speech Ban are both unconstitutional under the applicable standard of review. Ms. Gbalazeh has standing to bring a challenge to the Free Speech Ban despite not being cited under that ordinance insofar as both the Challenged Ordinances target the same activities of Plaintiffs such that each of the Free Speech Ban and Vehicle Panhandling Ordinance imminently affect the Plaintiffs' activities and have caused them and others to refrain from protected speech or expression. *See, e.g., Hill v. City of Houston*, 789 F.2d 1103, 1106–07 (5th Cir. 1986) (quoting *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S 947, 956–57 (1984)) ("Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial predication or assumption that the statute's very existence may cause others not before the court to refrain from protected speech or expression.").

32.     After her arrest for violating the Vehicle Panhandling Ordinance, Ms. Gbalazeh was transported by the Dallas Police Department to the Dallas County Jail and segregated from the Dallas County inmates in a separate holding cage. During her transportation, Ms. Gbalazeh was placed in the rear of a police van while the officers continued to arrest other persons. This took nearly an hour. During that time, she was forced to place her weight on her hands to keep herself from falling forward onto her face, which caused injury to her right shoulder.

33.     After her first arrest on February 13, 2016, Ms. Gbalazeh was taken before a magistrate judge in the Dallas Municipal Court System. During that initial appearance, Ms. Gbalazeh, along with other persons arrested under the Challenged Ordinances and/or Section 552.007 who are members of the class of Plaintiffs herein, were told by the DMCS magistrate judge that, in exchange for the entry of pleas of no contest, they would be given jail time served as a sentence and released that day. Ms. Gbalazeh—along with many other class Plaintiffs present at that hearing—entered a plea of no contest in exchange for a release based on jail time served.

34.     After her release, Ms. Gbalazeh subsequently obtained legal counsel. Nevertheless, on February 20, 2016, Ms. Gbalazeh was arrested again for allegedly violating the Vehicle Panhandling Ordinance. After her second arrest, Ms. Gbalazeh was again transported by the DPD to the Dallas County Jail where she re-aggravated her shoulder injury while sleeping on the concrete. Like her experience during the first arrest, she was ultimately brought before a DMCS magistrate judge where, along with other class Plaintiffs, was similarly presented with the choice of entering a no contest plea in exchange for jail time served. After pleading no contest, Ms. Gbalazeh and others who also pled no contest were released.

35.     As a result of the aforesaid wrongful charges brought against Ms. Gbalazeh and others for violation of the Free Speech Ban, Vehicle Panhandling Ordinance, and/or Section

552.007, Ms. Gbalazeh and others were wrongfully detained, falsely imprisoned, and charged without reason or probable cause.

36.     As a result of Defendant's repeated unlawful and unconstitutional conduct described herein, Ms. Gbalazeh and members of the plaintiff class suffered physical injuries, emotional distress, mental anguish, humiliation, and psychological trauma.

37.     As a result of Defendant's repeated unlawful and unconstitutional conduct described herein, since her arrest in 2016, Ms. Gbalazeh has curtailed her protest activities. For a period of approximately four months, she stopped her protests all together because she was afraid she would be arrested again under either the Free Speech Ban, Vehicle Panhandling Ordinance and/or Section 552.007. It was not until July 8 or 9, 2016 that Ms. Gbalazeh resumed her protest activities on the streets of the City of Dallas. Since returning to the streets to protest and advocate for her cause, Ms. Gbalazeh continues to be afraid she will be arrested again.

**B.     Plaintiff Lee Sunbury**

38.     Plaintiff Lee Sunbury has lived in the City of Dallas since December 2014, when he moved here from Palm Beach, Florida for a small furniture manufacturer. A true and correct copy of the Declaration of Lee Sunbury is attached to Plaintiffs' Appendix as **Exhibit 17** and incorporated herein by reference. After the company became insolvent, Mr. Sunbury was provided some money for bus fare to return to Palm Beach. In early 2015, before Mr. Sunbury could reach the bus station, he was robbed in Pleasant Grove for the money, as well as his phone, wallet, social security card, birth certificate, identification card, and nearly everything else in his possession. Mr. Sunbury was hospitalized and, upon his ultimate release, was provided a taxi cab ride to The Bridge Homeless Recovery Center in Downtown Dallas, which subsequently triggered his panhandling.

While Mr. Sunbury has held various odd jobs since then, panhandling has proved to be the most consistent way in which he obtains money.

39.     Mr. Sunbury has panhandled in many areas across the City of Dallas but recently he has taken up a spot on the corner of I-45 and S Lamar Street in Downtown Dallas. On a typical day of panhandling, he may receive about fifty dollars. On a good day, he may receive up to seventy dollars. On a bad day, he may only receive thirty dollars or less. His worst days; however, are the days he gets arrested for panhandling, which has happened four (4) times under the Vehicle Panhandling Ordinance since 2015, and once on February 28, 2018 under Texas Transportation Code § 552.007, a law which was found to be unconstitutional in 2013 in the case *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013). He has been fined a total amount of approximately $2,297.40 and has spent approximately eight (8) days being detained in jail by Defendant subsequent to his arrests.[14]

40.     Each time he was arrested, he was transported to the Dallas County Jail in Downtown Dallas. He typically spent one or two nights in jail waiting to be taken before a judge. On some occasions, it took up to three days or longer because of the number of people that were in jail with Mr. Sunbury for violations of the Challenged Ordinances and/or Texas Transportation Code Section 552.007, who were or appeared likewise poor or homeless. While he was in jail, Mr. Sunbury and the other individuals arrested were fed a bologna sandwich twice a day and were not provided anything to sleep on. They were refused any extra garments or blankets other than what

---

[14] In conducting interviews with named Plaintiffs, Mr. Sunbury, who is homeless, did not have a copy of his February 28, 2018 citation (or his other citations) to provide to counsel for Plaintiffs. As a result, counsel for Plaintiffs have relied on statements made during oral interviews to determine Mr. Sunbury's citation history. Despite due diligence in interviewing the named Plaintiffs herein and attempting to determine their citation histories, Plaintiffs discovered for the first time that Mr. Sunbury was cited under Texas Transportation Code § 552.007 from Defendant's Brief [Doc. 47] and Appendix [Doc. 48].

they had on already despite the jail being kept at a very cold temperature. According to Mr. Sunbury, it was a miserable experience which entailed a far worse living, eating and sleeping situation than he is able to provide for himself on the streets.

41.     When Mr. Sunbury was taken before a judge, he was informed of his right to enter a plea of guilty, no contest, or not guilty. He was told that if he plead guilty or no contest, his fine would be paid with time served in jail and he would be released immediately. He was told a plea of not guilty might mean that he would have to stay in jail for a longer period of time. More often than not, to avoid having to spend any more time in jail, he plead no contest.

42.     As a result of the aforesaid wrongful charges brought against Mr. Sunbury and others for violation of the Challenged Ordinances and/or Section 552.007, Mr. Sunbury and others were wrongfully detained, falsely imprisoned, and charged without reason or probable cause.

43.     As a result of Defendant's repeated unlawful and unconstitutional conduct described herein, Mr. Sunbury and members of the plaintiff class suffered physical injuries, emotional distress, mental anguish, humiliation, and psychological trauma.

**C.     Plaintiff Fred Sims**

44.     Plaintiff Fred Sims has lived in Dallas for over twenty years after having studied at Tyler Junior College in Tyler, Texas to obtain a job in petroleum technology. A true and correct copy of the Declaration of Fred Sims is attached to Plaintiffs' Appendix as **Exhibit 18** and incorporated herein by reference. Mr. Sims lived with a cousin in Oak Cliff until she passed away in 2016. In the early 2000s, Mr. Sims started drinking heavily and also developed problems with drug use. Despite recognizing that he was in a downward spiral, Mr. Sims struggled with his addictions and ultimately lost his job sometime in 2007. It was then that Mr. Sims started panhandling.

45.     Like Mr. Sunbury, Mr. Sims has panhandled across the entire City of Dallas and has recently been panhandling on the corner of I-45 and S Lamar Street in Downtown Dallas. Similar to Mr. Sunbury, on a typical day of panhandling, he may receive about fifty dollars. On a good day, he may receive up to seventy dollars. On a bad day, he may only receive thirty dollars or less.

46.     Mr. Sims has been arrested a total of thirteen (13) times; eleven (11) times under the Vehicle Panhandling Ordinance, and twice (2) under the Free Speech Ban. He has been fined a total amount of approximately $4,632.40 and has spent somewhere between twenty-five (25) and thirty-seven (37) days detained in jail by Defendant subsequent to his arrests.

47.     Each time he was arrested, he was transported to the Dallas County Jail in Downtown Dallas. He typically spent one or two nights in jail waiting to be taken before a judge. On some occasions, it took up to three days or longer because of the number of people that were in jail with Mr. Sims for violations of the Challenged Ordinances and/or Section 552.007 who were or appeared likewise poor or homeless. While he was in jail, Mr. Sims and the other individuals arrested were fed a bologna sandwich twice a day and were not provided anything to sleep on. They were refused any extra garments or blankets other than what they had on already despite the jail being kept at a very cold temperature. According to Mr. Sims, it was a miserable experience which entailed a far worse living, eating and sleeping situation than he is able to provide for himself on the streets.

48.     When Mr. Sims was taken before a judge, he was informed of his right to enter a plea of guilty, no contest, or not guilty. He was told that if he plead guilty or no contest, his fine would be paid with time served in jail and he would be released immediately. He was told a plea

of not guilty might mean that he would have to stay in jail for a longer period of time. More often than not, to avoid having to spend any more time in jail, he plead no contest.

49.     As a result of the aforesaid wrongful charges brought against Mr. Sims and others for violation of the Challenged Ordinances and/or Section 552.007, Mr. Sims and others were wrongfully detained, falsely imprisoned, and charged without reason or probable cause.

50.     As a result of Defendant's repeated unlawful and unconstitutional conduct described herein, Mr. Sims and members of the plaintiff class suffered physical injuries, emotional distress, mental anguish, humiliation, and psychological trauma.

**D.     The Challenged Free Speech Ban: Section 31-35.**

51.     The Defendant's Free Speech Ban, identified by local media outlets as the "Panhandling Law,"[15] is aimed at criminalizing the attempts of the less fortunate to exercise their right to free speech by seeking charity for themselves. The Free Speech Ban does this by making it unlawful to solicit for money or something of value in certain areas and at certain times of the day in the City.

52.     The Free Speech Ban, titled "Solicitation After Sunset" specifically provides that:

A person commits an offense if he conducts a solicitation in any outdoor area in the city at any time between sunset and sunrise on any day of the week.  It is a defense to prosecution under this subsection if the solicitation:

(1)  consisted exclusively of passive, nonverbal acts; or

(2)  was being conducted on property with the advance written permission of the owner, manager, or other person in control of the property.

See **Exhibit 4**, Free Speech Ban, Section 31-35(c).

---

[15] *See supra* Footnote 7.

53. "Solicitation" in the Free Speech Ban "means to ask, beg, solicit, or plead, whether orally or in a written or printed manner, for the purpose of receiving contributions, alms, charity, or gifts of items of value for oneself or another person." *See* Free Speech Ban, Section 31-35(a)(10).

54. "Sunrise" means "the time of day published on the weather page of the *Dallas Morning News* as the time for sunrise on a particular day in the city," and "Sunset" means "the time of day published on the weather page of the *Dallas Morning News* as the time of sunset on a particular day in the city." *See* Free Speech Ban, Section 31-35(a)(11)–(12).

55. In fact, other provisions of the Free Speech Ban are similarly improper. Section 31-35(d), "Solicitation-free zones" provides that:

> A person commits an offense if he conducts solicitation at any time in any outdoor area located within any of the following solicitation-free zones:
>
> (A) Central Business District solicitation-free zone;
>
> (B) Deep Ellum solicitation-free zone;
>
> (C) Uptown solicitation-free zone; and
>
> (D) Victory solicitation-free zone.

*See* Free Speech Ban, Section 31-35(d).

56. In turn, each of the "Solicitation-free zones" are defined areas of the City. For example, "Central Business District solicitation-free zone" is defined as "the area of the city bounded by Woodall Rodgers Freeway on the north, Central Expressway (elevated bypass) on the east, R.L. Thornton Freeway on the south, and Stemmons Freeway on the west." *See* Free Speech Ban, Section 31-35(a)(2); *see also* Free Speech Ban, §§ 31-35(a)(4) (defining the Deep Ellum solicitation-free zone); 31-35(a)(13) (defining the Uptown solicitation-free zone); 31-35(a)(14) (defining the Victory solicitation-free zone).

57.    Section 31-35(b) provides that: "[a] person commits an offense if he conducts a solicitation by coercion." *See* Free Speech Ban, Section 31-35(b). In turn, coercion is defined under the Free Speech Ban to encompass a number of actions which, arguably, protect public safety, but are duplicative of other, existing penal statutes.[16]

58.    Under the Free Speech Ban, COERCION means:

(A)    to approach or speak to a person in such a manner as would cause a reasonable person to believe that the person is being threatened with:

(i)    imminent bodily injury; or

(ii)    the commission of a criminal act upon the person or another person, or upon property in the person's immediate possession;

(B)    to persist in solicitation after the person solicited has given a negative response;

(C)    to block, either individually or as part of a group of persons, the passage of a solicited person; or

(D)    to engage in conduct that would reasonably be construed as intended to compel or force a solicited person to accede to demands.[17]

*See* Free Speech Ban, Section 31-35(a)(3).

59.    Additionally, the Free Speech Ban prohibits solicitation to any person placing or preparing to place money in a parking meter (Section 31-35(e)) as well as solicitation within 25 feet of an automated teller machine, entrance or exit of a financial institution, a public pay

---

[16] Texas law penalizes theft by threat as robbery. TEX. PEN. CODE ANN. § 29.02 (a)(2) (West) ("A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.").

[17] In Texas, theft is defined as appropriation without consent, such as by force.  TEX. PEN. CODE ANN. § 31.03 (a)(b)(1-2) (West 2017).

telephone, a self-service car wash or fuel pump, a public transportation stop, or an outdoor dining area of a fixed food establishment. *See* Free Speech Ban, Section 31-35(f)(1)–(7).

60.     An offense of the Free Speech Ban "is punishable by a fine not to exceed $500." *See* Free Speech Ban, § 31-35(i).

61.     The Free Speech Ban prohibits speech based solely on the content of the speech by forbidding any inquiry requesting any contributions, alms, charity, or gifts of any items of value but allowing all other types of speech.

62.     On information and belief, the Defendant enacted Section 31-35 without considering any empirical data or other evidence to establish or substantiate public safety issues purportedly caused by solicitations which qualify for citation and/or arrest under the Free Speech Ban.

63.     As of the date of this filing, the Free Speech Ban remains on the books as a law of the City of Dallas despite a recent City police bulletin temporarily calling off active enforcement of the Ban.[18]

**E.     The Challenged Vehicle Panhandling Ordinance: Section 28-63.3.**

64.     The City's equally problematic Vehicle Panhandling Ordinance is a further effort to criminalize the exercise of freedom of speech through a content-based restriction. Under the Vehicle Panhandling Ordinance:

> A person commits an offense if, while occupying any public property adjacent to any public roadway in the city, he knowingly conducts a solicitation directed to . . . the attention of, the occupant of any vehicle stopped or traveling on the roadway.
>
> An offense occurs when the solicitation is made, whether or not an actual employment relationship is created, a transaction is completed, or an exchange of money, goods, or services takes place.

*See* **Exhibit 5**, Vehicle Panhandling Ordinance, Section 28–63.3(b).

---

[18] *See supra* Footnote 7.

65.     "Solicitation" under the Vehicle Panhandling Ordinance is defined to include any conduct or act whereby a person:

(A)     either orally or in writing, asks for a ride, employment, goods, services, financial aid, monetary gifts, or any article representing monetary value, for any purpose;

(B)     either orally or in writing, sells or offers for sale goods, services, or publications;

(C)     distributes without remuneration goods, services, or publications; or

(D)     solicits signatures on a petition or opinions for a survey.

Vehicle Panhandling Ordinance, Section 28–63.3(a)(5).

66.     Section 28-20, titled "Obedience to Chapter Required; Penalty," provides that:

(a)     It is a violation of this chapter for any person to do an act forbidden, fail to perform an act required, or commit an act made an offense by this chapter.

(b)     A person convicted of a violation of a provision of this chapter, for which another penalty is not provided by state law or other city ordinance, shall be punished by a fine not to exceed $500.

Section 28-20, Code of Ordinances of the City of Dallas, Texas.

67.     Section 28-63.3 makes subject to citation and/or arrest only speakers that "conduct a solicitation" while "occupying any public property adjacent to any public roadway in the city" which is "directed to . . . the attention of, the occupant of any vehicle stopped or traveling on the roadway."

68.     "Solicitation" is defined to target particular speech because of the idea or message expressed—asking for charity, offering goods or services for sale, distributing without remuneration goods or services, or soliciting signatures.

69.     There are distinctions between the communicative content of the regulated speech under Section 28-63.3 and speech which is not within the purview of Section 28-63.3.

70.     Examples of communicative content not regulated under Section 28-63.3 include, without limitation, wishing passers-by a happy birthday, encouraging them to vote for or against a particular candidate or issue, proclaiming love for a championship team of a particular sport, warning the public of a perceived doomsday or other catastrophic environmental threat, informing the public of the time and location of church services, or inviting members of the public to a church picnic.

71.     Section 28-63.3 only criminalizes speech constituting a "solicitation" which is made within the expansive geographic area which is "any public property adjacent to any public roadway in the city." Outside of this geographic area, or on private property, solicitations are permissible under Section 28-63.3.

72.     On information and belief, the Defendant enacted Section 28-63.3 without considering any empirical data or other evidence to establish or substantiate public safety issues purportedly caused by solicitations near public roadways.

**F.     Texas Transportation Code Section 552.007**

73.     Texas Transportation Code Section 552.007, titled "Solicitation by Pedestrians," provides as follows:

(a)     A person may not stand in a roadway to solicit a ride, contribution, employment, or business from an occupant of a vehicle, except that a person may stand in a roadway to solicit a charitable contribution if authorized to do so by the local authority having jurisdiction over the roadway.

(b)     A person may not stand on or near a highway to solicit the watching or guarding of a vehicle parked on the highway.

(c)     In this section, "charitable contribution" means a contribution to an organization defined as charitable by the standards of the United States Internal Revenue Service.

TEXAS TRANSPORTATION CODE § 552.007.

74.     In the case *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779

(S.D. Tex. 2013), the United States District Court for the Southern District of Texas held that:

> Texas Transportation Code § 552.007(a) is a content-based restriction of speech in
> a traditional public forum, not narrowly drawn to achieve a compelling state
> interest. Because a substantial number of its applications are unconstitutional, the
> statute in all its applications creates an unnecessary risk of chilling free speech. The
> statute is thus facially over-broad and invalid under the First Amendment.

*Jornaleros*, 945 F. Supp. 2d at 798.

75.     The *Jornaleros* decision further held that Texas Transportation Code § 552.007(a)

is unconstitutional on its face and as applied to the plaintiffs in the case. *Id.* at 799. Furthermore,

the court found that the plaintiffs in *Jornaleros* were entitled to a declaratory judgment and a

permanent injunction against enforcement of § 552.007(a) by the defendant municipality. *Id.* at

801–02.

76.     On information and belief, the Defendant knew or should have known that Section

552.007 was held unconstitutional yet continued to enforce Section 552.007 as discussed herein.

### G.     Liability of the Defendant City of Dallas

77.     Upon information and belief, at all relevant times, the Defendant, acting through

the DPD, maintained a *de facto* and/or *de jure* policy, custom, and practice of enforcement of the

unconstitutional Challenged Ordinances and/or Section 552.007 in the unconstitutional manner

described herein. *See* Elizabeth Findell, *Dallas Council Members Call for Panhandling

Crackdown*, DALLAS MORNING NEWS, November 10, 2014, https://www.dallasnews.com/

news/news/2014/11/10/dallas-council-members-call-for-panhandling-crackdown   (last   visited

Aug. 20, 2018) (quoting District 5 Dallas City Councilman Rickey D. Callahan at a meeting of the

Quality of Life Committee saying that the City needed to "[b]reak their backs, break their spirit—

that's the only way we're going to win this battle" while advocating to have panhandlers ticketed and jailed as many times as it takes to make them leave the City).

78.     Upon information and belief, there exists and existed in the Defendant, DPD and DMCS an official and/or unofficial policy, custom, pattern and practice of enforcing the unconstitutional Challenged Ordinances and Section 552.007 against individuals who appear to be poor or homeless in the City of Dallas. Upon information and belief, there was no such an official and/or unofficial policy, custom, pattern and practice of enforcement against individuals who do not fall into this category of description.

79.     Upon information and belief, there exists and/or existed a policy maker for Defendant in the Dallas City Council.

80.     Upon information and belief, there exists and/or existed a policy maker for Defendant in the Dallas City Manager.

81.     Upon information and belief, there exists and/or existed a policy maker for Defendant in the Dallas Police Department.

82.     Upon information and belief, the Quality of Life Committee constitutes a policy maker for the Defendant.

83.     Upon information and belief, the Dallas City Council members on the Quality of Life Committee constitute policy makers for the Defendant.

84.     Upon information and belief, there exists or existed an official or unofficial policy, custom, pattern and practice of enacting and enforcing laws to achieve the desired purpose of Defendant of removing individuals who appear to be poor or homeless from the streets in the City of Dallas. *See supra* Notes 1, 2, 3, 4, 5, 6, and 7.

85.     There are numerous other instances in which courts have overturned laws which are the same or similar to the Challenged Ordinances complained of herein. *See, e.g., Thayer v. City of Worcester*, 144 F. Supp. 3d 218 (D. Mass. 2015); *Norton v. City of Springfield, Illinois*, 806 F.3d 411 (7th Cir. 2015); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015); *McLaughlin v. Lowell*, 140 F. Supp. 3d 177 (D. Mass. 2015); *Blitch v. City of Slidell*, 260 F. Supp. 3d 656 (E.D. La. 2017); *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013); *Thompson v. City of Chicago*, No. 01-C-6916, 2002 WL 31115578 (N.D. Ill. Sept. 24, 2002); *Bufkins v. City of Omaha*, 922 F.2d 465 (8th Cir. 1991); *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000); and *Loper v. New York Police Department*, 999 F.2d 699 (2d Cir. 1993). In fact, the *Jornaleros* decision found Section 552.007 to be unconstitutional and the defendant's enforcement thereof to be in violation of the First and Fourteenth Amendments, as well as entitling plaintiffs to *inter alia* injunctive and declaratory relief. *Jornaleros*, 945 F. Supp. 2d at 798, 801–02.

86.     Further, based on a City of Dallas Memorandum dated December 29, 2017, the Defendant knew that there are a variety of other laws that may be enforced with regard to solicitation offenses posing a threat to public health or safety, including Texas Penal Code § 22.07 (terroristic threats); Texas Penal Code § 22.01(a)(1) (assault); Texas Penal Code § 22.01(a)(2) (assault by threat); Texas Penal Code § 42 (disorderly conduct); and Dallas City Code § 7A (littering). A true and correct copy of the December 29, 2017 memorandum is attached to Plaintiffs' Appendix as **Exhibit 19** and incorporated by reference herein.

87.     Despite the existence of those other laws, the Defendant in the December 29, 2017 Memorandum also acknowledged the Defendant's continued policy and practice of responding to solicitation-related complaints through enforcement of Texas Transportation Code § 552.007, a

law which was previously found unconstitutional in *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013).

88.     In light of other instances in which courts have overturned laws which are the same or similar to the Challenged Ordinances, as well as the press coverage and prior overturned laws of the City of Dallas, the City knew or should have known that the Challenged Ordinances violated the First Amendment but nevertheless failed to repeal them.

89.     Additionally, in light of the other instances in which courts have overturned laws which are the same or similar to the Challenged Ordinances, including Section 552.007 in *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013), as well as the press coverage and prior overturned laws of the City of Dallas, such that the Defendant knew or should have known that enforcement of the Challenged Ordinances and Section 552.007 violated the First and Fourth Amendments but nevertheless failed to repeal them or otherwise cease all enforcement, Defendant is liable under Section 1983 for unreasonable searches and seizures in violation of the Fourth Amendment.

90.     Upon information and belief, there exists and existed in the Defendant, DPD and DMCS a pattern and practice of training police officers not to arrest persons under municipal ordinances of the City of Dallas. Upon information and belief, there existed an official or unofficial policy, custom, pattern and practice of making arrests under the Challenged Ordinances and/or Section 552.007 in contravention of that pattern and practice.

91.     Upon information and belief, and as detailed by the experiences of the named Plaintiffs herein, there exists and existed in the Defendant an official or unofficial policy, custom, pattern and practice of conducting "sweeps" or "roundups" of individuals appearing poor and/or homeless at times when it was deemed by Defendant to be necessary. Upon information and belief,

there was no such practice or pattern of enforcement against individuals who do not fall into this category of description.

92.     Upon information and belief, up until February 8, 2018, there existed in the Defendant, DPD and DMCS a pattern and practice of enforcing the unconstitutional Free Speech Ban against individuals who appear to be poor or homeless in the City of Dallas. Upon information and belief, there was no such practice or pattern of enforcement against individuals who do not fall into this category of description.

93.     Upon information and belief, the pattern of unconstitutional arrests, summons, and adjudications for violations of the Challenged Ordinances and Section 552.007 is so institutionalized as to represent a policy or custom of unconstitutional conduct by Defendant that caused the deprivation of Plaintiffs Gbalazeh, Sunbury and Sims' rights and those of the other members of the class of people who are similarly situated insofar as they appear and/or are poor or homeless.

94.     Upon information and belief, the policies, customs, patterns and practices complained of herein were the moving force and actual cause of the arrests resulting in the constitutional deprivations which are the basis of this suit.

95.     On information and belief, Plaintiffs allege that if they continue their political activism or solicitation of alms in the expansive geographic area of any public spaces adjacent to roadways in the City, they will again be arrested and receive another citation, jailtime and/or penalties for violating the Vehicle Panhandling Ordinance or Section 552.007.

96.     In fact, the Dallas Police Chief Renee Hall at the City of Dallas public safety committee meeting on January 8, 2018 sought to clear up any confusion about her department's enforcement of the city's anti-panhandling ordinances by stating: "We are in no way stepping back

from our responsibility." *See* Jack Fink, *DPD Chief Seeks to Clear-Up Confusion Over Anti-Panhandling Ordinance*, Dallas CBS11, Jan. 8, 2018, http://dfw.cbslocal.com/2018/01/08/anti-panhandling-ordinance/ (last visited Aug. 20, 2018). A true and correct copy of this article is attached to Plaintiffs' Appendix as **Exhibit 20** and incorporated herein by reference. Chief Hall then said Defendant will still prosecute aggressive panhandlers who threaten or assault people under other laws such as the Vehicle Panhandling Ordinance. *See id.*

97.    On February 8, 2018, the Dallas Police Department issued Roll Call Training Bulletin ("**RCTB**") #2018-03, a true and correct copy of which is attached to Plaintiffs' Appendix as **Exhibit 21**. RCTB provides that:

> At this time, and until further notice, a Dallas Police Department officer shall not enforce or cite solicitation under Dallas City Code Section 31-35, "Solicitation by Coercion; Solicitation Near Designated Locations and Facilities; Solicitation After Sunset; Solicitation-Free Zones," of the Dallas City Code.

*See* **Exhibit 21**, RCTB #2018-03.

98.    RCTB #2018-03 further provides that a DPD officer may enforce and cite solicitation to occupants of vehicles on public roadways under the Vehicle Panhandling Ordinance, as well as other laws separate from the solicitation itself including: assault by threat (Texas Penal Code § 22.01(a)(2)), assault (TPC § 22.01(a)(1)), disorderly conduct (TPC § 42), and littering (Dallas City Code § 7A). Plaintiffs further allege on information and belief that at any moment the Defendant could reverse its policy on enforcement of the Free Speech Ban by simply issuing another Roll Call Training Bulletin.

99.    As of the date of this filing, both of the Challenged Ordinances are still both valid binding laws of the City of Dallas. Although the Defendant is not currently enforcing the Free Speech Ban "until further notice," the Defendant continues to enforce the Vehicle Panhandling Ordinance and Section 552.007 in violation of the First, Fourth, and Fourteenth Amendments of

the U.S. Constitution. Moreover, the Defendant's past enforcement of both the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007, have falsely imprisoned Plaintiffs, caused Plaintiffs damages and violated their rights under the First, Fourth, and Fourteenth Amendments.

100.    Plaintiffs have previously engaged in activities which would be subject to citation and/or arrest under the Free Speech Ban, Vehicle Panhandling Ordinance and Section 552.007. Plaintiffs believe that continuing these activities would violate the Vehicle Panhandling Ordinance, the Free Speech Ban, and Section 552.007, to the extent the policy set forth in RCTB #2018-03 is ever changed at Defendant's election. Finally, Plaintiffs have refrained from engaging in these activities based on the Free Speech Ban and Vehicle Panhandling Ordinance, and Defendant's continued enforcement of Section 552.007.

## VI.
## CLASS ACTION ALLEGATIONS

101.    Plaintiffs hereby reallege and incorporate by reference all above-stated paragraphs.

102.    Plaintiffs bring this action as a class action under FED. R. CIV. P. 23 on behalf of themselves and all others similarly situated.[19]  Plaintiffs seek to represent the following class: all people in Dallas who have been arrested or cited for violating the Free Speech Ban, Vehicle Panhandling Ordinance, or Texas Transportation Code § 552.007. Plaintiffs additionally seek to represent this class of people due to the same and/or similar violations of their constitutional rights which occurred as the result of arrest or citation in the Defendant's enforcement of the Challenged Ordinances and/or Texas Transportation Code § 552.007.

103.    This action is brought and may properly be maintained as a class action under Rule 23(a)(1)–(a)(4) and Rule 23(b)(2).

---

[19] A Motion to Certify a Class along with supplemental authority will follow this pleading.

A.      **The Proposed Class Satisfies Rule 23(a).**

104.    Members of the proposed class are so numerous that joinder is impracticable. On information and belief, as of April 24, 2016, at least 39,665 arrests or citations have been issued under the authority of the Free Speech Ban or Vehicle Panhandling Ordinance. On information and belief, that number has grown greatly since the initial April 24, 2016 disclosure of the 39,655 people arrested or cited. On information and belief, there are numerous others who have also been cited or arrested under Texas Transportation Code § 552.007 for which joinder is similarly impracticable.

105.    Joinder is also impracticable because membership in the large proposed class is fluid. People enter the proposed class every day. Monitoring for these changes, and joining and dismissing plaintiffs repeatedly, would not be a practical way to manage this litigation.

106.    The relief sought is common to all members of the proposed class, and common questions of law and fact exist as to all members of the class. Plaintiffs seek prospective relief from enforcement of the Free Speech Ban, Vehicle Panhandling Ordinance, or Section 552.007, as well as damages for false imprisonment and past violations of their First, Fourth, and Fourteenth Amendments on a class-wide basis.

107.    Among the most important, but not the only, common questions of law and fact are: (a) whether the Free Speech Ban and Vehicle Panhandling Ordinance are unconstitutionally vague, overbroad, or unconstitutional as applied; (b) whether there is any compelling lawful reason to restrict life-sustaining conduct for many people in Dallas by enforcing the Challenged Ordinances; (c) whether the Challenged Ordinances are the most narrowly tailored methods of achieving any compelling lawful reason to restrict life-sustaining conduct for many people in Dallas to the extent that a compelling lawful reason is ultimately found to exist; (d) whether there exists or existed a

pattern and practice of enforcement of the Challenged Ordinances and/or Section 552.007, or failure to prevent their enforcement against persons who appear and/or are poor and/or homeless, including but not limited to wrongful arrests, summonses, and adjudications of violations of the Challenged Ordinances and/or Section 552.007; (e) whether prospective relief is appropriate to ensure the Challenged Ordinances are terminated in every respect and their harmful effects are nullified; (f) whether an award of damages is appropriate for false imprisonment as the result of Defendant's enforcement of the Challenged Ordinances and/or Section 552.007; and (g) whether an award of damages is appropriate under any other applicable bases of liability as the result of Defendant's enforcement of the Challenged Ordinances and/or Section 552.007.

108.    Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

109.    The Named Plaintiffs' claims are typical of the claims of the proposed class members, and they have the same interests as all other members of the proposed class that they represent. The Named Plaintiffs' claims arise from the same course of conduct as claims of the proposed classes, and their claims are based on the same legal theories as those of the proposed classes.

110.    The Named Plaintiffs are adequate representatives of the proposed class because they are members of the class and because their interests coincide with, and are not antagonistic to, those of the class.

111.    The Named Plaintiffs are familiar with the City of Dallas' ordinances and practices challenged here and the constitutional protections they seek to vindicate. The Named Plaintiffs are prepared to respond to discovery requests in this case. The Named Plaintiffs are committed to

fulfilling the role and duties of class representatives protecting the fundamental constitutional rights of all Dallas residents.

112.    The Named Plaintiffs are represented by counsel competent in federal class action and federal civil rights litigation and experienced in myriad complex commercial litigation matters—Ramon de Jesus Rodriguez and Christopher S. Murphy of Murphy Rodriguez, PLLC. An affidavit from Plaintiffs' counsel describing their qualifications will accompany a motion for class certification. The Named Plaintiffs and their attorneys will fairly and adequately protect the interests of the members of the class.

**B.      General Applicability, Rule 23(b)(2).**

113.    Class action status is appropriate because Defendant has acted and refused to act on grounds generally applicable to the proposed class. Defendant's Challenged Ordinances apply equally to the class regardless of differences among class members. In contrast to Federal Rule of Civil Procedure 23(b)(3), the focus of the Court's inquiry is not on how each individual class member is affected by Defendant's conduct, but on the legality and unconstitutionality of the Defendants' conduct itself. It is designed for civil rights cases such as this where a disenfranchised class of persons are the victims of systemic abuses conducted under the color of law.

114.    Plaintiffs seek final injunctive and declaratory relief protecting them from violations of their constitutional rights. The rights at stake are fundamental. Without class action certification, the proposed class will have no access to justice regarding the unconstitutional conduct that is occurring on the very doorstep of this Honorable Court.

115.    Injunctive and declaratory relief with respect to each claim would be appropriate to the class as a whole. All members of the proposed class are entitled to the constitutional protections Plaintiffs seek to enforce.

C.      **Predominance and Superiority, Rule 23(b)(3).**

116.    The predominant questions in this case are whether the Challenged Ordinances and Section 552.007 violate the proposed class members' constitutional rights under the First Amendment and whether the procedures employed by Defendant in enforcing the Challenged Ordinances and Section 552.007 likewise violated the proposed class members' constitutional rights under the Fourth and Fourteenth Amendments and constituted false imprisonment. These questions are susceptible to generalized, class-wide proof. There is no individualized evidence or legal argument required to succeed on such claims.

117.    A class action is superior to alternative methods of trying individual claims. In this case, there is no realistic alternative for members of the proposed classes to try their claims. As people who are cited or arrested under the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 are people whose circumstances have forced them to engage in conduct that falls within the purview of the Challenged Ordinances, members of the proposed class are not likely to be able to invest the resources necessary to retain an attorney or bring the claims *pro se*.

118.    There will be no extraordinary difficulty in management of the Class action.

**VII.**
**CLAIMS**

A.      **Count 1 – Violations of Plaintiffs' Right to Freedom of Speech, 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the U.S. Constitution.**

119.    Plaintiffs hereby reallege and incorporate by reference all above-stated paragraphs.

120.    Plaintiffs bring this claim on behalf of themselves and all others similarly situated in the prospective class.

121.    By reason of the aforementioned, the Defendant's Free Speech Ban and Vehicle Panhandling Ordinance, as amended, created, adopted, and enforced under color of state law, as

well as Defendant's enforcement of Section 552.007, have prohibited and continue to prohibit Plaintiffs from exercising their right to engage in free speech in a traditional public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

122. Plaintiffs engaged in and planned to further engage in constitutionally protected speech on a public sidewalk or public street when they were arrested and therefore prohibited from exercising their right to constitutionally protected speech due to the Defendant's Free Speech Ban, Vehicle Panhandling Ordinance, and the Defendant's enforcement of Section 552.007.

123. Plaintiffs were arrested, held in confinement and criminally prosecuted with sanctions for their constitutionally protected free speech due to the Defendant's Free Speech Ban and Vehicle Panhandling Ordinance, as well as Defendant's enforcement of Section 552.007.

124. Plaintiffs' free speech has not caused a public nuisance, disturbed the peace or otherwise created a public safety or traffic safety risk.

125. Defendant's Free Speech Ban and Vehicle Panhandling Ordinance, and Section 552.007, are content-based, targeting the political speech and message of Plaintiffs.

126. Plaintiffs reasonably fear that if they were to exercise their right to constitutionally protected free speech in public in the City, Plaintiffs would be arrested and/or criminally charged under the Defendant's Free Speech Ban, Vehicle Panhandling Ordinance or under Section 552.007. Plaintiffs reasonably fear that they could also be arrested and/or charged under the Free Speech Ban insofar as Defendant may elect at its option to reverse the policy of temporary nonenforcement set forth in RCTB #2018-03.

127.    As a direct and proximate result of the Defendant's continued enforcement of the Vehicle Panhandling Ordinance and Section 552.007, and the continued existence as a valid law of the Free Speech Ban, Plaintiffs' free speech is chilled and they are deterred from exercising their constitutionally protected free speech rights.

128.    Plaintiffs seek a declaration from this Court that the Defendant's Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 are constitutionally invalid either on their face as they are vague and overbroad, or as they have been unlawfully applied to Plaintiffs' peaceful free speech activities.

129.    Plaintiffs seek preliminary relief against the Defendant's enforcement of the Vehicle Panhandling Ordinance and Section 552.007, as well as permanent injunctive relief against the enforcement of both of the Challenged Ordinances and Section 552.007 so that Plaintiffs can return to engaging in peaceful, constitutionally protected speech in a traditional public forum in the City without fear of criminal citation, penalties, and/or arrest.

130.    If the Defendant is not enjoined from enforcing the Free Speech Ban, Vehicle Panhandling Ordinance or Section 552.007, Plaintiffs will be irreparably harmed.  Plaintiffs are now suffering a continuous injury due to the enforcement of the Vehicle Panhandling Ordinance and Section 552.007, because they are unable to communicate their message without fear of or actual arrest. Plaintiffs are suffering a continuous injury insofar as the Free Speech Ban is still a valid law of Defendant despite the current policy of nonenforcement under RCTB #2018-03.

131.    Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress Plaintiffs' harm. Accordingly, injunctive relief is appropriate.

i.      *The Challenged Ordinances and Section 552.007 are Facially Unconstitutional.*

132.    Defendant's Free Speech Ban and Vehicle Panhandling Ordinance are facially unconstitutional insofar as no application of the Challenged Ordinances would be constitutional.

133.    Section 552.007 is likewise facially unconstitutional insofar as no application of Section 552.007 would be constitutional. In the case *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013), the United States District Court for the Southern District of Texas held that:

> Texas Transportation Code § 552.007(a) is a content-based restriction of speech in a traditional public forum, not narrowly drawn to achieve a compelling state interest. Because a substantial number of its applications are unconstitutional, the statute in all its applications creates an unnecessary risk of chilling free speech. The statute is thus facially over-broad and invalid under the First Amendment.

*Jornaleros*, 945 F. Supp. 2d at 798.

134.    The *Jornaleros* decision further held that Texas Transportation Code § 552.007(a) is unconstitutional on its face and as applied to the plaintiffs in the case. *Id.* at 799. Furthermore, the court found that the plaintiffs in *Jornaleros* were entitled to a declaratory judgment and a permanent injunction against enforcement of § 552.007(a) by the defendant municipality. *Id.* at 801–02.

135.    Plaintiffs at all relevant times held and hold an actual and well-founded fear that the Challenged Ordinances and Section 552.007 would be enforced against them.

136.    Plaintiffs bring a facial challenge to the Free Speech Ban and Vehicle Panhandling Ordinance insofar as the mere existence of the Free Speech Ban and Vehicle Panhandling Ordinance may cause others not before the court to refrain from constitutionally protected speech or expression.

137.    Plaintiffs likewise request declaratory, injunctive, and other relief pursuant to the Defendant's enforcement of Section 552.007 insofar as "[t]he statute in all its applications creates an unnecessary risk of chilling free speech." *Jornaleros*, 945 F. Supp. 2d at 798.

### ii.    The Challenged Ordinances are Unconstitutionally Vague.

138.    Defendant's Free Speech Ban is unconstitutionally vague because there is no way an ordinary or reasonable person would know how the Defendant construes "passive acts" or "nonverbal acts" in comparison to "solicitation" as defined under the Free Speech Ban. Thus, the definition of "solicitation" restricted by the silencing provision does not provide a person of ordinary intelligence fair notice of what conduct is prohibited. It is so all-inclusive as to put nearly unfettered discretion in the hands of a police officer who sees a person communicating with someone between sunset and sunrise or in one of the restricted zones.

139.    The definition of "solicitation" under the Free Speech Ban does not provide a person of ordinary intelligence fair notice of what conduct triggers a duty to conduct only "passive acts" or "nonverbal acts." It is so all-inclusive that anyone performing any act for more than a moment is subject to arrest on an officer's whim.

140.    Defendant's Vehicle Panhandling Ordinance is likewise unconstitutionally vague because there is no way an ordinary or reasonable person would know how the Defendant construes "directed to, or intended to attract the attention of, the occupant of any vehicle" as defined under the Vehicle Panhandling Ordinance. Thus, the conditions precedent to a prohibited solicitation under the Vehicle Panhandling Ordinance do not provide a person of ordinary intelligence fair notice of what conduct is prohibited. It is so all-inclusive as to put nearly unfettered discretion in the hands of a police officer who sees a person communicating with someone while within the zone of focus of the Vehicle Panhandling Ordinance.

141.    Since the Free Speech Ban and Vehicle Panhandling Ordinance envelope myriad protected speech and expression in failing to specifically define all of their operable terms, the Challenged Ordinances are unconstitutionally vague and chill protected free speech.

### iii.    The Challenged Ordinances and Section 552.007 are Unconstitutionally Overbroad.

142.    Defendant's Free Speech Ban is not a reasonable time, place and manner restriction insofar as the law restricts speech with content that qualifies as "solicitation," defined so broadly that it sets no clear bounds on communication:

> Solicitation "means to ask, beg, solicit, or plead, whether orally or in a written or printed manner, for the purpose of receiving contributions, alms, charity, or gifts of items of value for oneself or another person."

*See* Free Speech Ban, Section 31-35(a)(10).

143.    Likewise, the Vehicle Panhandling Ordinance is not a reasonable restriction. Insofar as it prohibits speech with content that qualifies as "solicitation" which occurs while occupying "any public property adjacent to any public roadway" which is "directed to, or intended to attract the attention of, the occupant of any vehicle," the Vehicle Panhandling Ordinance's terms are so broad that they set no clear bounds.

144.    Defendant's Free Speech Ban and Vehicle Panhandling Ordinance are not narrowly tailored to serve any compelling lawful governmental interest. The Free Speech Ban is overbroad insofar as it mandates a blanket prohibition on panhandling at night or within certain areas of the City.  Likewise, the Vehicle Panhandling Ordinance is overbroad insofar as it prohibits solicitation "for any purpose." The Challenged Ordinances are each also overbroad insofar as they overlap with conduct subject to prosecution under other existing criminal laws.

145.    Defendant's Free Speech Ban and Vehicle Panhandling Ordinance do not adequately allow for alternative means of effective exercise of Plaintiffs' free speech rights.

146.    Defendant's Free Speech Ban and Vehicle Panhandling Ordinance encompass peaceful free speech that is not threatening, violent, or unsafe.

147.    Defendant's Free Speech Ban and Vehicle Panhandling Ordinance prevent and deter Plaintiffs from engaging in constitutionally protected speech, thereby inflicting continuing injury to Plaintiffs.

148.    As a result of the overbreadth of Defendant's Free Speech Ban and Vehicle Panhandling Ordinance, a high probability exists that Defendant will engage in over-enforcement of the Challenged Ordinances in a manner which unavoidably criminalizes constitutionally protected activity.

149.    In addition, Plaintiffs likewise request declaratory, injunctive, and other relief pursuant to the Defendant's enforcement of Texas Transportation Code § 552.007(a) insofar as the statute has been found to be "facially over-broad and invalid under the First Amendment." *Jornaleros*, 945 F. Supp. 2d at 798.

**B.    Count Two – Violations of Plaintiffs' Right Against Unreasonable Search and Seizure, 42 U.S. C. § 1983 and Fourth and Fourteenth Amendments to the U.S. Constitution.**

150.    Plaintiffs hereby reallege and incorporate by reference all above-stated paragraphs.

151.    Plaintiffs bring this claim on behalf of themselves and the prospective class.

152.    Defendant's above-described policies, practices and conduct violated Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitutional and 42 U.S.C. § 1983, which provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

153.    Defendant has, through its policies, practices and conduct caused Plaintiffs to be deprived of their Fourth Amendment rights to be free from unreasonable search and seizure. Plaintiffs were the target of a predetermined policy of arrest, detention, and harassment enacted and executed by Defendant. Further, the Challenged Ordinances and Defendant's enforcement of Section 552.007 simply provide a vehicle for the enforcement of Defendant's policies, practices and conduct and are a mere pretext for the ultimate purpose of Defendant, which is the eradication of Plaintiffs, and those similarly situated, from areas where there presence is perceived to be undesirable and harmful to the economic goals of Defendant.

154.    As a direct result of Defendant's above-described policies, practices and conduct, Plaintiffs and the Plaintiffs Class have suffered irreparable harms.

C.      **Count Three – Injunctive Relief, Preliminary and Permanent.**

155.    Plaintiffs hereby reallege and incorporate by reference all above-stated paragraphs.

156.    Plaintiffs bring this claim on behalf of themselves and the prospective class.

157.    Defendant's continued enforcement of the Vehicle Panhandling Ordinance and Section 552.007, and the potential for continued enforcement of the Free Speech Ban, violates the First, Fourth, and Fourteenth Amendment rights of Plaintiffs. In the absence of prospective relief, Plaintiffs are likely to suffer further harm from the Defendant's continued enforcement of the Vehicle Panhandling Ordinance and Section 552.007. *See Jornaleros*, 945 F. Supp. 2d at 798 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (citing *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976)). Further, Plaintiffs are entitled to the protection of further harm insofar as Defendant may elect at its option to reverse the policy of temporary nonenforcement set forth in RCTB #2018-03. Accordingly, on behalf of

themselves and the prospective class, Plaintiffs seek preliminary and permanent injunctive relief against the City of Dallas.

158.    There is a substantial likelihood that Plaintiffs will establish at trial that the Free Speech Ban and Vehicle Panhandling Ordinance are unconstitutional content-based restrictions on free speech which violate the First and Fourteenth Amendments. There is also a substantial likelihood that Plaintiffs will establish at trial that the policies, practices and procedures used by Defendant in enforcing the Challenged Ordinances and Section 552.007 violated Plaintiffs' Fourth and Fourteenth Amendment rights. As a result, there is also a substantial likelihood that Plaintiffs will prevail under their § 1983 claims at trial.

159.    A preliminary injunction is necessary to preserve the status quo, to prevent the irreparable injury to the public that would result from Defendant's continued enforcement of the Vehicle Panhandling Ordinance and/or Section 552.007, pending the outcome of this matter. Moreover, preserving the status quo is necessary to allow the Court to render effective relief if the Plaintiffs prevail at trial. Indeed, Plaintiffs would have no adequate remedy at law, and this Court's ability to fashion effective relief would be significantly impaired, if Defendant proceeds with enforcement of a law that is found after trial to be unconstitutional in a manner which is also found to be unconstitutional, or otherwise enforcing laws which have already been found unconstitutional such as Section 552.007 in *Jornaleros de las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013).

160.    Any harm to Defendant from enjoining the continued enforcement of the Vehicle Panhandling Ordinance and/or Section 552.007 would be outweighed by the actual and potential harm to the general public that would result from the preliminary injunction being denied. The risk of continued citation, arrest and prosecution of individuals under a potentially unconstitutional law

and one which has been found unconstitutional is a harm of the greatest magnitude. Finally, as stated above there are numerous existing laws which will adequately protect public safety during the pendency of this suit. Indeed, the Defendant expressly acknowledges this in its RCTB #2017-18. *See* **Exhibit 21**. Accordingly, the balancing of these two factors weighs in favor of entry of a preliminary and permanent injunction.

161.    Granting the requested preliminary and permanent injunctive relief will serve the public interest.

### D.    Count Four – Declaratory Relief.

162.    Plaintiffs hereby reallege and incorporate by reference all above-stated paragraphs.

163.    Plaintiffs bring this claim on behalf of themselves and the prospective class.

164.    The facts alleged in this case as alleged establish that, under all the circumstances, there is a substantial controversy between parties having adverse legal interests which is of sufficient immediacy and reality as to warrant the issuance of a declaratory judgment.

165.    Plaintiffs are entitled to a declaration that the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 are unconstitutional content-based restrictions on free speech in violation of the First and Fourteenth Amendments of the U.S. Constitution.

166.    Plaintiffs are entitled to a declaration that the conduct described herein violated Plaintiffs' constitutional rights as alleged under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution.

## VIII.
## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Yvette Gbalazeh, Lee Sunbury and Fred Sims, on behalf of themselves and all others similarly situated, respectfully request that the Court provide the following relief against the Defendant:

A.      Assume jurisdiction over this matter;

B.      Enter an order certifying the proposed class;

C.      Enter a preliminary injunction which enjoins Defendant from applying and enforcing Defendant's unconstitutional Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 as described above;

D.      Enter a permanent injunction which requires Defendants to take any and all remedial measures necessary to completely remove all records of any arrest, charge, prosecution or conviction of the Challenged Ordinances and/or Section 552.007, including without limitation:

(i) directing Defendant to destroy all mug shots (or other photographs), fingerprints, and all paper and electronic data or files making any reference to an arrest, charge, prosecution or conviction under either of the Challenged Ordinances or Section 552.007;

(ii) directing Defendant that any convictions and/or warrants contained in any criminal records concerning violations of the Challenged Ordinances or Section 552.007 be immediately expunged; and

(iii) directing that all outstanding warrants concerning violations of the Challenged Ordinances or Section 552.007 be immediately vacated and expunged;

E.      Enter a judgment and decree:

(i)     Declaring that Defendant's Free Speech Ban and Vehicle Panhandling Ordinance unconstitutionally deny Plaintiffs of their rights to free speech under the First and Fourteenth Amendments,

(ii)    Declaring that Defendant's methods and manner of enforcement of the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 unconstitutionally deny Plaintiffs of their rights against unreasonable searches and seizures under the Fourth Amendment,

(iii)   Directing Defendants to immediately communicate to all personnel of the DPD and DMCS and the assistant district attorneys within the City of Dallas that the Free Speech Ban, Vehicle Panhandling Ordinance, and Section 552.007 are unconstitutional, void, and unenforceable;

(iv)    Directing that immediate remedial training that the Challenged Ordinances and Section 552.007 are unconstitutional be provided to all current and future members of the DPD and DMCS through a dedicated mandatory training;

(v)     Directing Defendants put in place a system for tracking all arrests or charges for the unconstitutional Challenged Ordinances and Section 552.007 in a contemporaneous manger so that any arrest or charge can be immediately terminated;

(vi)    Directing Defendants to program any and all databases including but not limited to the DPD and DMCS computerized arrest and complaint system, and the Dallas Court and Detention Services Department records management system, to reject the Challenged Ordinances and Section 552.007 as valid charges and generate an error report; and

(vii)   Directing Defendants to issue policies and procedures to ensure that the unconstitutional Challenged Ordinances and Section 552.007 are not enforced, including but not limited to DPD patrol guide procedures, training manuals, and DMCS procedures and policies;

F.      Award Plaintiffs monetary damages to compensate them for their present and continuing loss of free speech in the City of Dallas, as well as their past violations of their Fourth and Fourteenth Amendment rights, as well as their false imprisonment by Defendant, and for all other actual injuries Plaintiffs have suffered as a result of Defendant's conduct with respect to its Free Speech Ban, Vehicle Panhandling Ordinance and Section 552.007;

G.      Award Plaintiffs damages constituting punitive damages for bad faith conduct in enforcing the Challenged Ordinances and Section 552.007 and egregious violations of Plaintiffs' constitutional rights as described herein in an amount to be proven at trial;

H.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

I.      Grant any such further relief as the Court finds is appropriate.


Dated: October 2, 2018.

Respectfully submitted,

**MURPHY RODRIGUEZ, PLLC**
3300 Oak Lawn Ave. Suite 408
Dallas, Texas 75219
P: 972-752-0557
F: 972-692-7719
Ramon@gotexlaw.com
Murphy@gotexlaw.com

By: /s/Ramon de Jesus Rodriguez
Ramon de Jesus Rodriguez
State Bar No. 24088319
By: /s/Christopher S. Murphy
Christopher S. Murphy
State Bar No. 24079031

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I have caused a copy of the foregoing to be delivered to the following in accordance with the Federal Rules of Civil Procedure on October 2, 2018.

Sonia Ahmed, sonia.ahmed@dallascityhall.com
Justin Roy, justin.roy@dallascityhall.com
Kathleen Fones, kathleen.fones@dallascityhall.com
Dallas City Attorney's Office
1500 Marilla Street #7DN Dallas, TX 75201

          By: <u>/s/Christopher S. Murphy</u>
          Christopher S. Murphy