IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| YVETTE GBALAZEH, LEE SUNBURY, and FRED SIMS, on behalf of themselves and all others similarly situated, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIV. CASE NO. 3:18-cv-00076-N |
| CITY OF DALLAS, TEXAS, a municipality of the State of Texas, | § § § | |
| Defendant. | § § | JURY TRIAL DEMANDED |

### PLAINTIFFS' BRIEF IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

COME NOW, Plaintiffs YVETTE GBALAZEH, LEE SUNBURY, and FRED SIMS on

behalf of themselves and all others similarly situated (collectively, "**Plaintiffs**"), file this Brief in

Support of Application for Preliminary Injunction (this "**Brief**"), and respectfully states as follows:

i

## TABLE OF CONTENTS

I.     INTRODUCTION………………………………………………………………1

II.    ARGUMENT AND ANALYSIS......................................................................1

    A.     **Plaintiffs Have Established a Substantial Likelihood of Success on the Merits with Respect to their First and Fourteenth Amendment Challenges to the Free     Speech Ban and Vehicle Panhandling Ordinance**..................................2

        i.     *The Challenged Ordinances are Content-Based Restrictions on Free Speech Subject to Strict Scrutiny*…………………………...…………3

        ii.    *The Challenged Ordinances Are Not Narrowly Tailored to Serve a Compelling Governmental Interest*..............................................................5

    B.     **Plaintiffs Have Established a Substantial Likelihood of Success on the Merits with Respect to their Claims under the Fourth, Fifth, Sixth and Fourteenth Amendments**....................................................................................12

        i.     *Applicable Criminal Procedure for Alleged Violations of the Challenged Ordinances*..............................................................................................12

        ii.    *Procedure Concerning the Right to Request Appointment of Counsel for Indigents Accused of a Misdemeanor Punishable by Confinement*.......15

    C.     **A Preliminary Injunction is Necessary to Prevent Irreparable Injury to the Public**.......................................................................................................16

    D.     **Greater Injury Will Result from Denying the Preliminary Injunction Than From Its Being Granted**...................................................................................17

    E.     **Granting the Preliminary Injunction will Not Disserve the Public Interest**..18

III.   **CONCLUSION**...............................................................................................18

# TABLE OF AUTHORITIES

## Federal Cases

*Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Col. 2015)..............................7, 8, 9

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009).........................................................................2

*Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567 (5th Cir. 1974).......................................1

*Hill v. City of Houston*, 789 F.2d 1103 (5th Cir. 1986).................................................................2

*Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971)........................................................................1

*McLaughlin v. Lowell*, 140 F. Supp. 3d 177 (D. Mass. 2015).......................................7, 9, 10, 11

*Norton v. City of Springfield, Illinois*, 806 F.3d 411 (7th Cir. 2015)..........................................7, 8

*Pottinger v. City of Miami*, 810 F. Supp. 1551 (S.D. Fla. 1992)....................................................9

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992)........................................................................................4

*Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 192 L. Ed 2d 236 (2015)...............3, 4, 5, 6, 7

*Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980)....................................................6

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011)..........................................................................................................................4

*Thayer v. City of Worcester*, 144 F. Supp. 3d 218 (D. Mass. 2015).......................................5, 6, 7

*United States v. Kokinda*, 497 U.S. 720 (1990)..............................................................................6

## Municipal Ordinances

Section 28-63.3, Code of Ordinances of the City of Dallas, Texas.................................................1

Section 28-63.3, Code of Ordinances of the City of Dallas, Texas.................................................1

## Secondary Sources

Dean Mosiman, *Under Pressure, Madison is Backing Off Controversial Panhandling Ordinance*, WISCONSIN STATE JOURNAL, Jan. 8, 2016 http://host.madison.com/wsj/news/local/govt-and-

politics/under-pressure-madison-is-backing-off-controversial-panhandling-ordinance/article_cffb 9e4f-84e5-5be6-8e65-6e5094f736a0.html (last accessed May 14, 2018).....................................11

Elizabeth Hernandez, *Denver Police Ordered to Stop Enforcing City's Panhandling Ban*, THE DENVER POST, Oct. 2, 2015, https://www.denverpost.com/2015/10/02/denver-police-ordered-to-stop-enforcing-citys-panhandling-ban/ (last accessed May 14, 2018).........................................11

Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2947...........................................2

# I.
# INTRODUCTION

1.      Section 31-35 of the Code of Ordinances of the City of Dallas, Texas (the "**Free Speech Ban**" also known as the "**Panhandling Ordinance**"), Section 28-63.3 of the Dallas Code of Ordinances (the "**Vehicle Panhandling Ordinance**"), and Section 552.007 of the Texas Transportation Code § 552.007 (the "**Roadway Panhandling Law**") (collectively, the "**Challenged Laws**"), are unconstitutional under the First and Fourteenth Amendments of the U.S. Constitution. Moreover, the arrest of Plaintiffs, and those similarly situated, are unconstitutional under the Fourth and Fourteenth Amendments insofar as Plaintiffs have suffered an unreasonable search and seizure and been deprived of paramount due process and equal protection rights protected by the U.S. Constitution. For these reasons, and as explained further below, Plaintiffs seek a ruling that they are entitled to a partial judgment regarding liability under 42 U.S.C. § 1983.

# II.
# PROCEDURAL HISTORY

2.      Plaintiffs originally filed suit seeking relief under various claims. Plaintiffs have since amended their pleadings, and the live-pleadings today allege that the City of Dallas (the "City") is liable to same for their unconstitutional arrests under the Challenged Laws.  Specifically, Plaintiffs allege, *inter alia*,[1] that the Challenged Laws are facially unconstitutional; in other words, there are no applications of the law that do not violate the First Amendment. Plaintiffs now seek a declaration from this Court that the Challenged Laws are unconstitutional restrictions on free speech.

---

[1] Plaintiffs are also challenging the Challenged Laws as applied to them, but for purposes of this filing seek only a ruling as to liability on Plaintiffs facial challenge to the Challenged Laws.

1

### III.
### STATEMENT OF THE CASE

3.      On July 30, 2019, this Court entered a scheduling order requiring Plaintiffs to seek summary judgment as to liability. Dkt. 94. Plaintiffs and Defendant agreed to pursue this course of action to avoid the unnecessary expenditure of judicial resources and City resources. This Court previously ruled that Plaintiffs were not entitled to a preliminary injunction as to the Panhandling Ordinance or the Vehicle Panhandling Ordinance, but were as to the Roadway Panhandling Law. Dkt. 88. The Court also ruled that Plaintiffs could not satisfy the threat of irreparable harm because the City's representation that it would not enforce the Panhandling Ordinance. *Id.* Lastly, the Court held that the Vehicle Panhandling Ordinance did not violate the First Amendment, because despite being subject to strict scrutiny, it was sufficiently narrowly tailored to achieve the City's alleged compelling interest of public safety and traffic concerns. Dkt. 86.

### IV.
### ARGUMENT AND ANALYSIS

4.      The Court should grant summary judgment in favor of Plaintiffs because there are no genuine issues of material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see *Pratt v. Harris City*., 822 F.3d 174, 180 (5th Cir. 2016) (summary judgment is appropriate if "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

5.      Plaintiffs contend that the Challenged Laws are unconstitutional violations of the First Amendment, and any arrests pursuant thereto violate the Fourth Amendment. As demonstrated below, applicable case law establishes that the Challenged Laws are unconstitutional.

**A.      Plaintiffs Have Established a Substantial Likelihood of Success on the Merits with Respect to their First and Fourteenth Amendment Challenges to the Free Speech Ban and Vehicle Panhandling Ordinance.**

6.      "The Constitution does not protect only decent, law-abiding people.  The first amendment was designed to shield pesky, irritating, and contentious people, even busybodies and troublemakers." *Hill v. City of Houston*, 789 F.2d 1103, 1113 (5th Cir. 1986).  Indeed, "Freedom of speech, is protected not only for our newspapers and politicians, but also for our citizens on back streets of slum areas." *Id.*  Here, Plaintiffs have established that the City violated their First and Fourth Amendment rights.

7.      Insofar as the Challenged Laws are content-based restrictions on free speech, they are presumptively unconstitutional. From this starting point, the Challenged Laws are then subject to analysis under strict scrutiny. This means that the Defendant must show a compelling reason for the Challenged Ordinances and establish that they are the least restrictive means to accomplish the lawful compelling reason. *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2226–27, 192 L. Ed 2d 236 (2015). Defendant has articulated traffic and safety concerns as the City's compelling interest in enforcing the Challenged Laws.

8.      Indeed, case law below demonstrates that justifications for panhandling ordinances such as public safety, traffic safety, aesthetic appeal, and the promotion of tourism and business do not qualify as compelling justifications. Additionally, case law demonstrates that, due to the existence of other laws designed to protect the public safety which overlap with these panhandling ordinances (i.e., existing criminal laws), they are not the least restrictive means for accomplishing the government's alleged goals. In light of the overwhelming amount of cases invalidating restrictions nearly identical to the Challenged Laws across the country, Plaintiffs seek a judgment declaring the Challenged Laws unconstitutional.

3

### i.    *The Challenged Ordinances are Content-Based Restrictions on Free Speech Subject to Strict Scrutiny.*

9.    The Supreme Court of the United States recently issued its ruling in the case *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 192 L. Ed 2d 236 (2015). In *Reed*, the Court held that Gilbert, Arizona had unconstitutionally restricted the speech of a small, itinerant church by limiting the size and duration of signs directing worshipers to its services while allowing campaign and other signs to be larger and remain up longer. *Reed*, 135 S. Ct. at 2221–23.

10.    The dispute originated after the town adopted a municipal sign ordinance that regulated the manner in which signs could be displayed in public areas. *Reed*, 135 S. Ct. at 2224–25. The ordinance imposed stricter limitations on signs advertising religious services than signs that displayed "political" or "ideological" messages. *Id.* When the town's Sign Code compliance manager cited a local church for violating the ordinance, the church filed a lawsuit in which they argued the town's sign regulations violated its First Amendment right to freedom of speech. *Id.* at 2225–26.

11.    The case is significant because the Supreme Court affirmed that strict scrutiny should always be applied when a law has a facial content-based restriction. *Reed*, 135 S. Ct. at 2232 ("Not 'all distinctions' are subject to strict scrutiny, only *content-based* ones are") (emphasis in original). Indeed, "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226 (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992)). Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *Id.* at 2227 (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 564–66 (2011)). Here, the Challenged Ordinances are aimed at curtailing a very specific kind of speech (any speech which indicates a person is

4

seeking charity or alms) which occurs during a very specific time of day (between sunset and sunrise) or takes place in a specific part of town (in a "Solicitation-free zone" or on public property adjacent to a public roadway). Accordingly, the Challenged Ordinances at issue in this case are content-based and therefore subject to strict scrutiny.

> ## ii.    The Challenged Ordinances Are Not Narrowly Tailored to Serve a Compelling Governmental Interest.

12.    Where a challenged ordinance imposes content-based restrictions, it is presumptively unconstitutional and requires the government prove that the restriction is narrowly tailored in order to serve compelling state interests. *Reed*, 135 S. Ct. at 2231. In *Reed*, the town offered only two governmental interests in support of the distinctions the Sign Code drew: (1) preserving the town's aesthetic appeal and (2) traffic safety. *Id.* The Court stated that, "[a]ssuming for the sake of argument that those are compelling governmental interests, the Code's distinctions fail as hopelessly underinclusive." *Id.* As to aesthetics, the Court found that the Code allowed the "unlimited proliferation" of larger ideological signs while strictly limiting the number, size, and duration of smaller directional ones. *Id.* As a result, the Court held that "[t]he [t]own cannot claim that placing strict limits on temporary directional signs is necessary to beautify the [t]own while at the same time allowing unlimited numbers of other types of signs that create the same problem." *Id.* Similarly, the Court found that the town failed to show how the limitation on certain types of signs was necessary to eliminate threats to traffic safety, but that limiting other types of signs was not. *Id.* at 2232. The Court further found that the town offered no reason to believe that the restricted signs posed a greater threat to safety than the other less-restricted and unrestricted signs. *Id.*

13.    Since *Reed*, other courts have specifically considered panhandling ordinances like the Free Speech Ban. In *Thayer v. City of Worcester*, 144 F. Supp. 3d 218 (D. Mass. 2015), two

panhandling ordinances were struck down as unconstitutional on remand from the United States

Supreme Court with instruction to apply the principles articulated in *Reed*. Specifically, the

challenged ordinances made it "unlawful for any person to beg, panhandle or solicit in an

aggressive manner" and prohibited standing or walking on a traffic island or roadway except for

the purpose of crossing at an intersection or crosswalk, or entering or existing a vehicle or for some

other lawful purpose. *Id.* at 221. On remand, the court first affirmed that "[s]oliciting contributions

is expressive activity that is protected by the First Amendment." *Id.* at 232 (citing *Schaumburg v.*

*Citizens for a Better Env't*, 444 U.S. 620 (1980); *United States v. Kokinda*, 497 U.S. 720 (1990)).

The court went on to reaffirm that:

> [C]haritable appeals for funds, on the street or door to door, involve a variety of
> speech interests—communication of information, the dissemination and
> propagation of views and ideas, and the advocacy of causes—that are within the
> protection of the First Amendment. . . . [S]olicitation is characteristically
> intertwined with informative and perhaps persuasive speech seeking support for
> particular causes or for particular views on economic, political or social issues, and
> . . . without solicitation the flow of such information and advocacy would likely
> cease.

*Id.* (citing *Schaumburg*, 444 U.S. at 632).

14.     In *Thayer*, the city's primary interest in enacting the challenged ordinance was the

safety and welfare of its citizens and the general public. *Id.* at 235. In recognizing that there is a

legitimate interest in promoting the safety and convenience of its citizens on public sidewalks and

streets, the court noted the question then became whether the provisions of the challenged

ordinance were narrowly tailored and/or the least restrictive means available. *Id.*

15.     First, the court considered the challenged ordinance's temporal solicitation ban

which prohibited "soliciting any person in public after dark, which shall mean the time from one-

half hour before sunset to one-half hour after sunrise." *Thayer*, 144 F. Supp. 3d at 235. The court

found that this provision was substantially overbroad and that the city had not cited to any evidence

or provided any meaningful argument to establish that "a blanket prohibition on panhandling at

night is necessary to advance public safety." *Id.* (internal citations omitted).

16.     The court in *Thayer* next went on to state that it was inclined to uphold some of the

categories of proscribed conduct as sufficiently restrictive but stated it was unable to do so because

other existing criminal laws encompassing the conduct at issue rendered the challenged ordinance

as overly broad:

> If I were writing on a pristine page, I would be inclined to hold that at least some
> of the other categories of proscribed conduct targeted by [the challenged ordinance]
> are sufficiently restrictive for achieving the City's goal of promoting the safety and
> welfare of the public.  However, two recent post-*Reed* decisions have addressed
> almost identical aggressive panhandling ordinances as those addressed in this case.
> Both cases involved evidence similar to that put on by the City in this case to justify
> enforcement of the aggressive panhandling provisions, and in both the courts found
> that the municipalities had failed to establish that similar provisions to the following
> (defined by [the challenged ordinance at issue in *Thayer*] to constitute "aggressive"
> panhandling) survived strict scrutiny.   Their failure was because they were
> duplicative of existing criminal laws and/or they were not the least restrictive means
> of achieving the government's goal:
>
> (1) continuing to solicit from a person after the person has given a negative response
> to such soliciting;
>
> (2) following the person being solicited, with the intent of asking that person for
> money or other things of value;
>
> (3) soliciting money from anyone who is waiting in line for tickets, for entry to a
> building or for any other purpose; and
>
> (4) soliciting any person within 20 feet of the entrance to or parking area of any
> bank, automated teller machine, automated teller machine facility, check cashing
> business, mass transportation facility, mass transportation stop, public restroom,
> pay telephone or theatre or place of public assembly, or of any outdoor seating area
> of any café, restaurant or other business.

*Thayer*, 144 F. Supp. 3d at 235–36 (citing *McLaughlin v. Lowell*, 140 F. Supp. 3d 177 (D. Mass.

2015); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Col. 2015)).

17.     Furthermore, in *Norton v. City of Springfield, Illinois*, 806 F.3d 411 (7th Cir. 2015), the court deferred consideration until the Supreme Court decided *Reed v. Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015) and then considered whether the challenged ordinance's principal rule— barring oral requests for money now but not regulating requests for money later—is a form of content discrimination. *Norton*, 806 F.3d at 412. "The majority opinion in *Reed* effectively abolishes any distinction between content regulation and subject-matter regulation. Any law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification." *Id.* As a result, the Seventh Circuit found that the challenged ordinance was a form of content discrimination and accordingly was unconstitutional due to the lack of any compelling reasons offered by the city. *Id.* at 413.

18.     About a month after *Norton*, in *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276 (D. Colo. 2015), the court considered a city ordinance which in part made unlawful panhandling and solicitation between sunset and sunrise. In acknowledging both *Reed* and *Thayer*, the court found that the city was unable to demonstrate that the challenged ordinance was necessary to serve a compelling state interest of promoting public safety. *Browne*, 136 F. Supp. 3d at 1292. The court specifically found that the challenged ordinance was over-inclusive because it prohibited protected speech that poses no threat to public safety. *Id.* The court further stated that the city failed to demonstrate how the temporal prohibition on panhandling was a prohibition on protected speech that was necessary for public safety, reasoning that there was no indication that panhandling at night was inherently dangerous or threatening to the public. *Id.* "Therefore, [the city] has not shown that a blanket prohibition on panhandling at night is necessary to advance public safety." *Id.* at 1292–93. The court then went on to analyze other portions of the ordinance which limited panhandling based on distance restrictions in certain areas, also finding that the city failed to

8

demonstrate how the panhandling of an individual in those defined areas, without more, constituted any threat to public safety. *Id.* at 1293–94. As a result, the court concluded that "the ban on panhandling individuals in the locations specified [by the challenged ordinance] is not necessary to serve a compelling government interest." *Id.* at 1294.

19.     The *Browne* decision also correctly observed that: "[a]t times, threatening behavior may accompany panhandling, but the correct solution is not to outlaw panhandling. The focus must be on the threatening behavior." *Browne*, 136 F. Supp. 3d at 1294. The court continued:

> Thus, the problem in this case is that [the city] has taken a sledgehammer to a problem that can and should be solved with a scalpel. In attempting to combat what it sees as threatening behavior that endangers public safety, [the city] has passed an ordinance that sweeps into its purview non-threatening conduct that is constitutionally protected.

*Id.*

20.     In *McLaughlin v. Lowell*, 140 F. Supp. 3d 177 (D. Mass. 2015), the court struck down two panhandling ordinances that prohibited (1) panhandling in a broad area of downtown Lowell, Massachusetts and (2) aggressive panhandling. As to the downtown ordinances, the city identified compelling interests of the promotion of tourism and business, as well as providing a safe, pleasant environment and eliminating so-called nuisance activity. *McLaughlin*, 140 F. Supp. 3d at 188. The court first noted that the promotion of tourism and business has never been found to be a compelling government interest for the purposes of the First Amendment. *Id.* at 189 (citing *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1581 (S.D. Fla. 1992)). In turn, the court stated:

> The First Amendment does not permit a city to cater to the preference of one group, in this case tourists or downtown shoppers, to avoid the expressive acts of others, in this case panhandlers, simply on the basis that the privileged group does not like what is being expressed. It is core First Amendment teaching that on streets and sidewalks a person might be confronted with an uncomfortable message that they cannot avoid; this is a virtue, not a vice. Just as speech cannot be burdened because it might offend a hostile mob, it cannot be burdened because it would discomfort comparatively more comfortable segments of society.

*McLaughlin*, 140 F. Supp. 3d at 189 (internal citations and quotation marks omitted).

21.    As to the compelling interest of public safety in support of the downtown ordinances, the court noted that public safety was a compelling interest but that this rationalization was an after-the-fact argument initially raised in the course of litigation. *McLaughlin*, 140 F. Supp. 3d at 190–91. The court concluded that the provisions were in fact passed to promote tourism, not public safety, and as a result did not further any compelling state interest. *Id.*

22.    The *McLaughlin* court went on to analyze provisions on aggressive panhandling in the challenged ordinance. *McLaughlin*, 140 F. Supp. 3d at 191. Unlike the less than compelling interest in tourism for the downtown panhandling provisions, the court found that "the Aggressive Panhandling provisions were enacted in furtherance of a compelling state interest: public safety." *Id.* Accordingly, the court determined that it still had to analyze whether the challenged ordinances were the least restrictive means available for achieving the goal of public safety. *Id.*

23.    The plaintiffs in the case contended that the aggressive panhandling provisions were not the least restrictive means available for achieving the goal of public safety. *McLaughlin*, 140 F. Supp. 3d at 191. The plaintiffs contended that the provisions were not the least restrictive means and that the city had failed to try a less speech-restrictive alternative—i.e., better enforcing existing laws, such as disorderly conduct or assault—before enacting the aggressive panhandling ordinances. *Id.* In its analysis, the court stated that "where a law prohibits behavior on the basis of expressive content—even if the underlying behavior may be prohibited constitutionally or already is prohibited—the decision to create an additional content-based prohibition must satisfy strict scrutiny." *Id.* at 193. The court went on to discuss that:

> The Ordinance gives Lowell law enforcement officials the option to seek an additional penalty on a panhandler who commits assault or obstructs the sidewalk, one which might be exercised in addition to existing laws or instead of them. It

subjects those who assault while engaged in particular expressive acts to increased liability, whether in the form of stacked penalties or more flexibility, and hence more negotiating leverage, for law enforcement officials in their charging decisions.

The City has not demonstrated that public safety requires harsher punishments for panhandlers than others who commit assault or battery or other crimes. . . . The City may not deem criminal activity worse because it is conducted in combination with protected speech, and it certainly may not do so in order to send a message of public disapproval of that speech on content based grounds.

*McLaughlin*, 140 F. Supp. 3d at 193.

24.     Moreover, in light of these developments in the area of panhandling law, some cities such as Denver, Colorado[2] and Madison, Wisconsin[3]—and even Defendant with regard to the Free Speech Ban—have decided to stop enforcing their panhandling laws.

25.     In the present case, the Challenged Ordinances cannot be said to be narrowly tailored in furtherance of any compelling governmental interest. As analyzed above in *Reed*, *Thayer*, *Norton*, *Browne*, and *McLaughlin*, there is likewise nothing which establishes a blanket prohibition on panhandling at night or within certain areas of the City of Dallas—both geographically predefined or within 25 feet of certain objects or establishments—is necessary to advance public safety. Further, enacting panhandling laws which overlap with existing criminal laws inherently establishes that the panhandling laws are not the least restrictive means to achieve

---

[2] Elizabeth Hernandez, *Denver Police Ordered to Stop Enforcing City's Panhandling Ban*, THE DENVER POST, Oct. 2, 2015, https://www.denverpost.com/2015/10/02/denver-police-ordered-to-stop-enforcing-citys-panhandling-ban/ (last accessed May 14, 2018).

[3] Dean Mosiman, *Under Pressure, Madison is Backing Off Controversial Panhandling Ordinance*, WISCONSIN STATE JOURNAL, Jan. 8, 2016 http://host.madison.com/wsj/news/local/govt-and-politics/under-pressure-madison-is-backing-off-controversial-panhandling-ordinance/article_cffb9e4f-84e5-5be6-8e65-6e5094f736a0.html (last accessed May 14, 2018).

the government's goal. As a result, the Challenged Laws cannot pass muster under a strict scrutiny analysis and is therefore unconstitutional.

### III.
### CONCLUSION

26.     As demonstrated above, Plaintiffs are likely to prevail on their claims under 42 U.S.C. § 1983 and are therefore entitled to a preliminary injunction which prohibit Defendant from enforcing its Vehicle Panhandling Ordinance until this lawsuit is fully and finally adjudicated. Further, Plaintiffs are entitled to orders affirmatively requiring Defendant to abide by all applicable criminal procedure in their enforcement of city ordinances, including access of the accused to retain and confer with counsel, or to seek retained counsel, where punishment by confinement is imposed.